MOKAR PROPERTIES CORP., Respondent, *v.* LAWRENCE HALL et al., Appellants, et al., Defendant.

First Department, November 25, 1958.

*J. David Silvers* of counsel (*Norman C. Nicholson* with him on the brief; *H. A. & C. E. Heydt,* attorneys), for appellants.

*David Stein* for respondent.

BOTEIN, P. J. This appeal is from an order of Special Term denying a motion by defendants which sought primarily to dismiss the complaint for failure to state a cause of action and on the ground that the claim was released. The complaint, grounded on the alleged failure to convey real property, sets forth three causes of action.

The first cause, against the individual defendants Lawrence and Melville Hall, alleges that they contracted in writing to sell to plaintiff two parcels of real estate in Manhattan improved with apartment houses. In the contract, a copy of which was annexed to the complaint, the Halls represented that they were record owners of the properties and that they would give title such as a responsible title company would approve and insure. Plaintiff paid $25,000 down on the signing of the contract and agreed to pay an additional $145,000 on the closing of title, the balance being subject to outstanding mortgages.

The contract provided that the purchaser agreed to deliver to the sellers' attorneys, at least seven days before the date fixed for closing title, a written statement of objections to title

which the purchaser believed made title unmarketable. Pursuant to this provision, the Halls were timely notified prior to the date fixed for closing that the Title Guaranty & Trust Company required documents indicating the regularity of the transfer of the property in question from Melhar Realty Company, Inc., the previous record owner, to the Halls, who owned two thirds of its corporate stock. Alleged consideration for the transfer was cancellation of an outstanding debt owed to the Halls by the corporation. The Halls were required by the title company either to show the unanimous consent of the stockholders to the transfer or to bring an action to bar any claim by Mathesius, the remaining stockholder; to provide proof of the solvency of the corporation at the time of conveyance so that the transfer would not be subject to attack by creditors; and to obtain a clearance on taxes chargeable against the corporation on dissolution.

It is further alleged that on the date set for closing, plaintiff tendered $145,000 as provided in the contract. However, the Halls failed to produce any of the documents required by the contract, or to provide any of the necessary instruments and assurances in connection with objections to title, and failed to tender the deed to the premises. The contract provided: "In the event that the seller is unable to convey title in accordance with the terms of this contract, the sole liability of the seller will be to refund to the purchaser the amount paid on account of the purchase price and to pay the net cost of examining the title, which cost is not to exceed the charges fixed by the New York Board of Title Underwriters, and upon such refund and payment being made this contract shall be considered cancelled."

Two weeks after the closing date, defendants repaid to plaintiff the sum of $25,862.50, representing the down payment on the contract plus costs of title examination; but plaintiff claims to have lost the benefit of its bargain and seeks additional damages of $50,000.

Two questions are presented in connection with the first cause of action: (1), whether under the facts alleged any further liability on the part of the defendants existed, and (2), if further liability did exist, whether plaintiff had released its claim. It is defendants' position that the complaint itself alleges that they were unable to convey marketable title, so that with the return of the deposit and the payment of the costs of examining title, their liability under specific contract provisions came to an end. They contend further that the action of plaintiff in accepting and depositing their refund check constituted a general and complete release.

Plaintiff, on the other hand, has alleged that the defaults of the Halls were willful and deliberate, and that the objections to title were such as were created by the defendants and could have been avoided or cured by them. As to defendants' claim of release, plaintiff contends that it explicitly accepted the refund only in part payment of defendants' liability and affirmatively declared that further claim against the defendants was not being waived.

Upon failure of a vendor to convey real property as required by contract, the damages recoverable by a purchaser are dependent to some extent on the cause of the failure. Where the vendor has acted in good faith but is unable to give good title, the purchaser may recover only the amount he has already paid on the purchase price, together with necessary expenses incurred pursuant to the contract, such as costs for investigating title and reasonable attorney's fees (*Northridge* v. *Moore*, 118 N. Y. 419; *Maupai* v. *Jackson*, 139 App. Div. 524; *Holdridge* v. *Roberts*, 195 Misc. 646). Where the vendor acts in bad faith or willfully disregards the contract, the purchaser may also be entitled to recover for the loss of his bargain (*Bulkley* v. *Rouken Glen, Inc.*, 222 App. Div. 570, affd. 248 N. Y. 647; *Pumpelly* v. *Phelps*, 40 N. Y. 59; *Margraf* v. *Muir*, 57 N. Y. 155; *Mack* v. *Patchin*, 42 N. Y. 167; 5 Williston on Contracts [rev. ed.], § 1399; 92 C. J. S., Vendor and Purchaser, § 645). Of course, the parties to a contract may agree to extend or restrict the liability consequent upon a breach; or they may agree that no damages will be payable at all once the *status quo ante* has been restored.

The contract in this case purported to limit the liability of the vendor to refund of the amount payable on account of the purchase price and payment of the net costs of examining title. But such restriction was to be applicable only "[i]n the event that the seller is *unable* to convey title in accordance with the terms of this contract" (emphasis supplied). A limitation conditioned on such inability contemplates the existence of a situation beyond the control of the parties. Implicit in such a limitation is the obligation to act in good faith. A party under circumstances such as have been alleged cannot exculpate himself from liability by reliance on a condition precedent when his own conduct is the cause of the nonperformance of that condition (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378, 384; *Vandegrift* v. *Cowles Eng. Co.*, 161 N. Y. 435, 443). The vendor is under a duty to take affirmative action to convey a marketable title according to his contract of sale (*Smith* v. *Browning*, 225 N. Y. 358). If the vendor has contracted to convey, knowing

that there are circumstances that will render it impossible to do so, or if he is able with the reasonable expenditure of money and effort to remedy defects in title and neglects or refuses to do so, he has not acted in good faith; and he cannot then limit his damages by shielding himself behind such self-created or easily scaled barriers.

The complaint having alleged that the default of the defendants was willful and deliberate, a triable issue is raised as to whether in fact defendants acted in good faith or whether their alleged inability to convey marketable title was due entirely to circumstances beyond their control. If defendants were unable or made no effort to obtain the consent of the remaining stockholder because they had transferred the corporate property to themselves without full disclosure of its value; if they were unable to show proof of the solvency of the corporation because they had stripped it of all its assets; and if they were unable to obtain tax clearances because they had willfully failed to meet their tax obligations, it could be found that they were undertaking to convey a title which, when they entered into the contract, they themselves knew they had rendered unmarketable. They should then be required to remedy the defects rather than to terminate the contract, or failing that, respond in damages, as sought in this complaint. In the event of an ordinary breach of an agreement to convey, the contractual provision defining and limiting the vendor's liability would govern. The allegations of willful and deliberate default in this case make inapplicable here the general rule that a reasonable contractual provision for a compensation in lieu of damages difficult of ascertainment will be upheld (*De Leeuw* v. *Ziff-Davis Pub. Co.*, 277 App. Div. 1055, and cases therein cited).

The issue as to whether plaintiff released defendants from all claims by accepting and depositing the proffered refund must likewise await trial. In accepting the refund of its down payment and the costs of title examination, plaintiff was being reimbursed for its own expenditures and argues it received only that which concededly was due (*Hudson* v. *Yonkers Fruit Co.*, 258 N. Y. 168, 173; *Mance* v. *Hossington*, 205 N. Y. 33, 36). But it explicitly reserved the question of its claim for loss of profits, and indicated it was not waiving its claim for further damages. Whether the alleged release was sufficiently broad in scope to release plaintiff's claim for loss of its bargain would depend upon the intention of the parties and the purpose for which it was given (*Simon* v. *Simon*, 274 App. Div. 447) — questions which cannot be satisfactorily resolved on pleadings and affidavits.

The gravamen of the second cause of action, also against the two Halls, is conspiracy " to do an illegal and improper act or acts ". It is alleged that the Halls conspired to deprive the government of taxes; to deprive the remaining stockholder, Mathesius, of her rightful share of the corporate assets and profits, and to deprive plaintiff of its bargain by procuring cancellation of the contract under a pretense of inability to convey so that they could sell to another at a higher price. Insofar as the complaint alleges wrongs to others, it creates no actionable rights in plaintiff. These were matters involving the internal affairs of the corporate defendant Melhar Realty Company, Inc. To the extent that it alleges a conspiracy to breach the contract with plaintiff, it pleads no actionable wrong (*Barnet* v. *Cannizzaro,* 3 A D 2d 745; *Labow* v. *Para-Ti Corp.,* 272 App. Div. 890; *Friedman* v. *Roseth Corp.,* 270 App. Div. 988, affd. 297 N. Y. 495; *Shapiro* v. *Greenwich Sav. Bank,* 266 App. Div. 359, affd. 293 N. Y. 724). Nor is a good cause of action pleaded by allegations of a conspiracy to commit a fraud resulting in breach of contract (*Golding* v. *Golding,* 4 A D 2d 65, 67; *Brackett* v. *Griswold,* 112 N. Y. 454, 466, 467).

The third cause of action, grounded on the same facts as those previously pleaded, seeks recovery from the corporate defendant Melhar Realty Company, Inc. and the minority stockholder Mathesius, as well as from the Halls, on the theory that in making the contract of sale the Halls were liquidating trustees of the corporate assets of Melhar and acted on behalf of the corporation and all its stockholders. While the corporation and the minority stockholder might have a claim against the Halls for breach of their fiduciary obligations towards them, they cannot be bound as principals responsible for the wrongful acts of their trustees towards third persons. Neither the corporation nor the defendant Mathesius had any direct contractual relation with plaintiff. The defaults alleged were not committed by them. The fact that they, as well as the Halls, might ultimately benefit through failure of the contract to convey the sole corporate asset, gives plaintiff no right to recover damages for loss of a bargain from them because of the acts of the Halls.

If in fact the Halls were acting, not for themselves, as alleged, but as agents for the corporation as undisclosed principal, a different result might ensue. But that is not what is pleaded here.

The order appealed from should therefore be modified on the law so as to dismiss the second and third causes of action, and in the exercise of discretion with leave to replead, and as so modified should be affirmed, without costs.

BREITEL, M. M. FRANK, VALENTE and STEVENS, JJ., concur.

Order unanimously modified on the law so as to dismiss the second and third causes of action contained in the complaint and in the exercise of discretion with leave to replead, and, as so modified, is affirmed, without costs.