■ PROGRESSIVE SOLAR CONCEPTS, INC., Respondent, v RACHEL S. M. GABES et al., Appellants.—In an action, *inter alia,* for specific performance of three contracts for the sale of real property and to recover damages arising from the alleged wrongful and malicious refusal of the defendants to convey that property, the defendants appeal from an order of the Supreme Court, Suffolk County (Doyle, J.), entered September 13, 1988, which denied their motion for summary judgment dismissing the complaint and granted the plaintiff's cross motion to compel them to answer interrogatories.

Ordered that the order is reversed, on the law, with costs, the motion is granted, the cross motion is denied, and the complaint is dismissed.

On September 15, 1985, the parties entered into three separate contracts whereby the plaintiff agreed to purchase from the defendants three parcels of land located in Bayport, New York. The closing date stipulated in each of the contracts was December 1, 1985, and each contained a standard limitation of liability clause providing, in pertinent part: "20. IF SELLER is unable to transfer title to PURCHASER in accordance with this contract, SELLER's sole liability shall be to refund all money paid on account of this contract, plus all charges made for * * * examining the title [and] any appropriate additional searches made in accordance with this contract". The contracts also included a typewritten clause providing: "27. If it should appear that the premises are affected by any question of title * * * which renders the title of the SELLER unmarketable then * * * the SELLER shall not be obligated to take any steps or incur any expense with respect to the removal thereof".

In January 1986 the purchaser's title insurance company raised certain exceptions to title and required that quitclaim deeds be obtained, *inter alia,* from the heirs of Aboudi Robin Mowlem, and Georgette Eshed. The sellers were able to obtain all the necessary quitclaim deeds except one from Georgette Eshed, who apparently did not reside in this country and who allegedly was not on speaking terms with one of the sellers. The purchaser indicated that it would not close until a deed from Eshed was obtained. By letter dated August 13, 1986, the sellers' attorney advised the purchaser that they considered

the contracts canceled and tendered a return of the down payment. The purchaser refused to accept the cancellation, and a closing was scheduled for September 3, 1986. At the purchaser's request, the closing was rescheduled twice more, to September 17, 1986, and then to October 8, 1986. However, the purchaser did not appear on that closing date, and, by letter of October 28, 1986, the sellers notified the purchaser it was in default of the contract and demanded return of the down payment. It appears that the down payment was returned to the sellers. The purchaser thereafter brought the instant action against the sellers (1) for specific performance or, alternatively, if the sellers were unable to convey good title, return of the down payment and damages, and (2) to recover damages for wrongful and malicious refusal to convey title.

It is clear that the parties to a contract for the sale of real property may agree, as they did here, to restrict the liability resulting from a breach, or may agree that no damages will be payable at all once the status quo has been restored (see, Calligar v Fradkoff, 154 AD2d 495; Mancini-Ciolo v Scaramellino, 118 AD2d 761, 762; Mokar Props. Corp. v Hall, 6 AD2d 536, 539). However, an obligation to act in good faith will be implied in connection with such liability-limiting clauses, in the event of an inability to convey good title (see, Mokar Props. Corp. v Hall, supra, at 539).

At bar, the record contains more than sufficient evidence of the defendants' diligence in attempting to meet the objections raised by the title insurance company to the title. Upon this record, it can only be concluded that the defendants acted in good faith in their efforts to convey marketable title.

Moreover, where, as here, the sellers have fulfilled their obligations under the contract, and the purchaser has been given an opportunity to cancel the contract because of a defect in title but has refused to avail itself of that opportunity and has been given more than a reasonable opportunity to perform under the contract of sale but fails to do so, the sellers may hold the purchaser in default (see, Orea v D'Auria, 160 AD2d 694). Thus, when the purchaser failed to appear at the last scheduled closing date, which was nearly a year after the closing date set in the contracts, the sellers properly declared the purchaser to be in default (see, Orea v D'Auria, supra; Shannon v Simon, 128 AD2d 859; Perillo v De Martini, 54 AD2d 691; Michaels v Flapman, 42 Misc 2d 812, affd 23 AD2d 967). Since the purchaser was in default under the terms of the contracts, the defendants are entitled to retain the down

payment made by it *(see, Maxton Bldrs. v Lo Galbo,* 68 NY2d 373; *Cooper v Bosse,* 85 AD2d 616, 618). Thompson, J. P., Brown, Lawrence and Balletta, JJ., concur.