■ BGW DEVELOPMENT CORP., Appellant, v MOUNT KISCO LODGE No. 1552 OF THE BENEVOLENT AND PROTECTIVE ORDER OF ELKS OF THE UNITED STATE OF AMERICA, INC., et al., Respondents. [669 NYS2d 56] —In an action, *inter alia,* to recover damages for breach of contract, the plaintiff appeals from stated portions of an order of the Supreme Court, Westchester County (Colabella, J.), entered April 23, 1996, which, after a nonjury trial, dismissed the first, second, third, and fourth causes of action and granted declaratory relief on the fifth cause of action to the extent of declaring, *inter alia,* that it had breached the parties' contract.

Ordered that the order is modified by (1) deleting the provision thereof which dismissed the second cause of action alleging breach of contract and substituting therefor a provision granting judgment in favor of the plaintiffs and against the defendant Mount Kisco Lodge No. 1552 of the Benevolent and Protective Order of Elks of the United States of America, Inc., on that cause of action, and (2) deleting the provision thereof which granted declaratory relief on the fifth cause of action to the extent of declaring that the plaintiff had defaulted in performance of the parties' contract, that the contract was properly cancelled by the defendant Elks, and that damages are limited to the payments made by the plaintiff to the Elks under the contract, and substituting therefor a provision dismissing the fifth cause of action; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements, and the

matter is remitted to the Supreme Court, Westchester County, for further proceedings in accordance herewith and the entry of an appropriate judgment.

The plaintiff and the defendant Mount Kisco Lodge No. 1552 of the Benevolent and Protective Order of Elks of the United States of America, Inc. (hereinafter the Elks) entered into a contract whereby the plaintiff was to purchase certain real property owned by the Elks. The contract afforded the plaintiff five years to close title, allegedly, *inter alia,* so that the plaintiff could seek out joint venturers to develop the property. The plaintiff made monthly payments pursuant to the contract for a number of years, but ceased these payments in November 1990, and commenced the instant action seeking, *inter alia,* rescission, damages for breach of contract, and a declaration that it was entitled to the return of the moneys it had paid under the contract. After a nonjury trial, the court, *inter alia,* declared that the plaintiff had breached the contract and that the Elks were entitled to retain the moneys. The plaintiff has appealed.

We conclude that the first cause of action for rescission was properly dismissed because the plaintiff's second cause of action sought inconsistent, alternative remedies under a breach of contract theory, and the trial proceeded under the theory that the plaintiff was seeking such damages for breach of contract (*see, Sorenson v Keesey Hosiery Co.,* 244 NY 73; 12 Williston, Contracts § 1455, at 14 [3d ed 1970]).

The testimony at trial revealed that the Elks, acting through the individual defendants, blocked two of the plaintiff's prospective partners from access to the property, and on numerous other occasions actively confronted and dissuaded prospective partners from pursuing plans for the property. The plaintiff also established that its negotiations with potential prospective partners Randazzo, Lindner, and Strauss had progressed to the point at which each of those parties was ready to enter into a binding contract and, in all likelihood, would have done so but for the defendants' interference. Every contract contains an implicit obligation and covenant of good faith and fair dealing (*see, e.g., Croce v Marisi,* 234 AD2d 333; *Halpern Dev. Venture v Board of Trustees,* 222 AD2d 652; *Goodstein Constr. Corp. v City of New York,* 111 AD2d 49, *affd* 67 NY2d 990; *Brassil v Maryland Cas. Co.,* 210 NY 235, 242). Here the defendants' purposeful and active dissuasion of the plaintiff's prospective partners and the denial of access to the property as required by the contract violated this obligation, notwithstanding that no contract between any third party and the plaintiff had been executed.

"Where, as here, a case is tried without a jury, our power to review the evidence is as broad as that of the trial court, bearing in mind, of course, that due regard must be given to the decision of the Trial Judge who was in a position to assess the evidence and the credibility of the witnesses. Moreover, the trial court's determination will generally not be disturbed on appeal unless it is obvious that the conclusions could not be reached under any fair interpretation of the evidence" (*Universal Leasing Servs. v Flushing Hae Kwan Rest.,* 169 AD2d 829, 830; *see also, Nicastro v Park,* 113 AD2d 129). The evidence here, however, reveals that not only did the plaintiff establish that the Elks' officers, directors, and trustees, i.e., Giulio Vedovino and others, interfered with its performance of the contract, but that the court's conclusion to the contrary could not have been reached upon any fair interpretation of that evidence (*see, Nicastro v Park, supra*). Accordingly, the plaintiff is entitled to judgment against the Elks on its second cause of action sounding in breach of contract.

The plaintiff's third cause of action against the individual officers of the Elks for tortious interference with the contract between the plaintiff and the Elks, was, however, properly dismissed. " '[A] corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith as an officer * * * [and did not commit] independent torts or predatory acts directed at another' " (*Murtha v Yonkers Child Care Assn.,* 45 NY2d 913, 915, quoting *Matter of Brookside Mills [Raybrook Textile Corp.],* 276 App Div 357, 367; *see also, Foster v Churchill,* 87 NY2d 744, 750-751; *S.F.P. Realty Corp. v G.S. Rockaway Dev.,* 206 AD2d 417; *Citicorp Retail Servs. v Wellington Mercantile Servs.,* 90 AD2d 532). Although the plaintiff has asserted that the actions of Vedovino and the other officers of the Elks were committed in furtherance of their own personal interests and not those of the Elks, on the record before us there exists a fair interpretation of the evidence which supports the trial court's finding that the plaintiff failed to establish these allegations by a fair preponderance of the evidence. Therefore, the trial court's dismissal of that cause of action will not be disturbed.

Similarly, the plaintiff's fourth cause of action, alleging tortious interference by the individual defendants with the prospective contracts between the plaintiff and those with whom it sought to establish joint ventures, was properly dismissed. "Where there has been no breach of an existing contract, but only interference with prospective contract rights [the] plaintiff

must show more culpable conduct on the part of the defendant" (*NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, 621). That is, the plaintiff must demonstrate that the defendant used "wrongful means" such as physical violence, fraud or misrepresentation, civil suits or criminal prosecution (*see, Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 AD2d 183, 191). Again, on the record before us we cannot say that the trial court improperly held that no such "wrongful means" had been established.

The fifth cause of action should have been dismissed as "[a] cause of action for a declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract" (*Apple Records v Capital Records*, 137 AD2d 50, 54; *see also, Levey v Leventhal & Sons*, 231 AD2d 877, 878).

Having determined that the Elks breached its contractual duty of good faith and fair dealing by failing to cooperate with the plaintiff's efforts to recruit joint venturers in the development of the property and by actively attempting to dissuade interested persons from joining with the plaintiff, we turn now to the question of the damages recoverable from the Elks by reason of the breach.

Paragraph 33 of the rider to the contract of sale dated March 16, 1988, provides that in the event that the Elks "shall be unable to convey marketable title to Purchaser in accordance with the terms and provisions of this Agreement or shall default in closing title, then the sole obligation of [the Elks] shall be to refund to Purchaser any and all sums theretofore paid to it by Purchaser" plus certain interest, and the net cost to the purchaser of any examination of title, "and [the Elks] shall have [no] other or further obligation to Purchaser" under the contract. Despite the fact that the contract specifically contemplated a limitation on the damages recoverable by the plaintiff, the clause is unenforceable under the circumstances of this case. A vendor of real property who breaches the contract of sale in bad faith cannot limit the damages recoverable by the injured purchaser by relying on a contractual limitation such as the one at bar (*see, Progressive Solar Concepts v Gabes*, 161 AD2d 752, 753; *Mokar Props. Corp. v Hall*, 6 AD2d 536, 539-540; *Bulkley v Rouken Glen, Inc.*, 222 App Div 570, 574, *affd* 248 NY 647; 9 Encyclopedia of NY Law, Damages, § 352; 77 Am Jur 2d, Vendor & Purchaser, § 663; 92 CJS, Vendor & Purchaser, § 603).

New York follows the rule that where the proof establishes that the vendor of real property failed to perform in bad faith,

the purchaser may recover the loss of its bargain (*see, Conger v Weaver,* 20 NY 140; *Mokar Props. Corp. v Hall, supra,* at 539; 9 Encyclopedia of NY Law, Damages, § 358), and those expenses and disbursements reasonably and necessarily incurred in preparation for its performance which were within the contemplation of the parties when the contract was made (*see,* 9 Encyclopedia of NY Law, Damages, § 359; 77 Am Jur 2d, Vendor and Purchaser, § 659).

The measure of damages for loss of bargain in a case in which the vendor, in bad faith, breaches a contract for the sale of real property which has been partially performed by the purchaser is the difference between the market value of the property and the amount unpaid on the purchase price (*see,* Annotation, *Measure of Recovery by Vendee Under Executory Contract for Purchase of Real Property Where Vendor is Unable or Refuses to Convey,* 48 ALR 12, § II [c], supplemented at 68 ALR 137, 140). The plaintiff's proof at trial failed to establish the market value of the property at the time of the breach, and thus it failed to prove its entitlement to loss of bargain damages. In such an event it is relegated to the return of the part of the purchase price which it paid on account, with interest from the time paid (*see,* 9 Encyclopedia of NY Law, Damages, §§ 353, 354). In addition the plaintiff may recover expenses reasonably and necessarily incurred in preparation for its performance of the contract which were within the contemplation of the parties when the contract was made and/or amended, including the cost of investigating title and reasonable attorney's fees (*see, Mokar Props. Corp. v Hall,* 6 AD2d 536, 539, *supra).* Since the modification agreement was negotiated, *inter alia,* for the specific purpose of permitting the plaintiff to seek joint venturers with which to consumate the sale, and the actions of the Elks frustrated such a joint venture and breached the contract, the plaintiff is entitled to recover the expenses reasonably and necessarily incurred in that search for joint venturers.

The Supreme Court never reached the issue of the plaintiff's damages because it determined that the plaintiff, and not the Elks, had breached the contract. Accordingly, the matter is remitted to the Supreme Court to review the present record, to make findings of fact as to damages, and to enter judgment accordingly.

We have reviewed the plaintiff's remaining contentions and find them to be without merit. Miller, J. P., Sullivan, Pizzuto and Friedmann, JJ., concur.