■ MONTGOMERY-OTSEGO-SCHOHARIE SOLID WASTE MANAGE-MENT AUTHORITY, Respondent-Appellant, et al., Respondent, v COUNTY OF OTSEGO, Appellant-Respondent. [671 NYS2d 545] —Mikoll, J. (1) Cross appeals from an order of the Supreme Court (Hughes, J.), entered December 18, 1996 in Schoharie County, which, *inter alia*, partially granted a motion by plaintiff Montgomery-Otsego-Schoharie Solid Waste Manage-ment Authority for summary judgment, and (2) appeal from an order of said court, entered June 13, 1997 in Schoharie County, which, *inter alia*, granted plaintiffs' motions for summary judg-ment dismissing the second affirmative defense and the counterclaim.

Plaintiff Montgomery-Otsego-Schoharie Solid Waste Manage-ment Authority (hereinafter MOSA) was created in 1987 to manage solid waste disposal for Montgomery, Otsego and Schoharie Counties. In 1989, MOSA and the participating counties entered into a written agreement providing, *inter alia*, that defendant would deliver or cause to be delivered all solid waste generated within its borders and that MOSA would provide solid waste management services with respect thereto. The source of revenue for MOSA's operations consisted of "tip-ping fees", a charge per ton of solid waste delivered to its facil-ities. These fees were subject to periodic adjustment. To enable MOSA to establish its annual budget, the agreement provided for the establishment of a "Guaranteed Annual Tonnage" (hereinafter GAT) for each participating county, and further provided for calculation and payment of a shortfall subsidy to MOSA in the event a county failed to meet its GAT obligation for any given year. The agreement further provided that a participating county would be relieved of its obligation to pay a shortfall subsidy only in the event of a "force majeure" (except for a change in the law) or upon exceeding its recycling goals. In the event a participating county sought to invoke the "force majeure" clause to relieve it of any obligation under the agree-ment, it was required to notify MOSA in writing within 15 days of the happening thereof.

MOSA informed defendant on February 5, 1996 that in con-sequence of its GAT shortfall for 1995, it owed MOSA $274,334; payment thereof was again requested on April 22, 1996. Upon defendant's refusal to pay, MOSA commenced this breach of contract action to recover the shortfall subsidy, and also sought counsel fees and expenses pursuant to section 17.9 of the agree-ment. Defendant answered, asserting four affirmative defenses and a counterclaim. Defendant's first affirmative defense al-leged that a "force majeure", in the form of an economic reces-

sion, relieved it of any shortfall liability. Its second affirmative defense alleged that MOSA incorrectly established its GAT for 1995. The third affirmative defense alleged that MOSA was obligated to negotiate an equitable adjustment of the shortfall amount, and its fourth affirmative defense alleged that MOSA failed to assist it in its performance under the agreement. Defendant's counterclaim alleged that MOSA breached the agreement by reason of certain flaws in its management and financial operations as determined by an audit of its operations by the State Comptroller's office.

MOSA moved for summary judgment and Supreme Court, in its December 18, 1996 order, partially granted the motion by dismissing defendant's first, third and fourth affirmative defenses, and partially dismissing its second affirmative defense, finding further discovery necessary to establish the basis for determining defendant's GAT shortfall amount. After completion of same, MOSA again moved to dismiss the balance of defendant's second affirmative defense and its counterclaim. In its June 13, 1997 order, Supreme Court granted this motion and thereupon awarded MOSA summary judgment on its complaint in the amount of $274,334 with interest from February 4, 1996. Defendant appeals from both orders, and MOSA appeals from the December 18, 1996 order dismissing its cause of action for counsel fees and expenses.

The sole point upon which we disagree with Supreme Court is in its dismissal of plaintiff's second cause of action seeking counsel fees and expenses. As noted by the court, the contract contained two relevant provisions. Paragraph 17.9, entitled "Expenses and Attorney's Fees", provides that "[w]here an event of default has occurred, the defaulting party agrees to pay all out-of-pocket expenses of the nondefaulting party (including reasonable fees and expenses of its counsel) in connection with the enforcement of the Agreement, including the collection of amounts due hereunder". Paragraph 17.1, entitled "Remedies for Breach", provides in part that "in the event any County fails to meet its [GAT] delivery obligations hereunder, the shortfall payments provided for * * * [herein] shall be the only damages payable by the County with respect to such failure to perform". Supreme Court found that the latter provision, dealing specifically with GAT delivery obligations and providing that the only damages recoverable as a result of a failure to perform shall be the shortfall payment, conflicted with and took precedence over the general provision providing for recovery of counsel fees.

While we agree generally that when a general contract pro-

vision is in conflict with a specific one the latter will generally be enforced, we disagree with the interpretation of the two provisions as conflicting. Counsel fees are not damages but rather "incidents of litigation" (*Matter of A. G. Ship Maintenance Corp. v Lezak*, 69 NY2d 1, 5; *see, City of Buffalo v Clement Co.*, 28 NY2d 241, 262). Defendant's failure to pay the GAT shortfall amount due under the contract constituted a default; consequently, under the provision for counsel fees in the event of a default, defined as, *inter alia*, failure to pay amounts due under the agreement within 60 days after receipt of an invoice therefor, MOSA's cause of action for counsel fees should not have been dismissed.

Defendant's affirmative defenses and counterclaim were properly dismissed. As to the counterclaim, the audit report issued by the Comptroller's office, which forms the sole basis for defendant's claim that MOSA violated section 2.2 of the agreement, does not allege that MOSA in any way violated any statutes, rules or regulations, nor does it raise a question of fact concerning same. Defendant's first affirmative defense alleged that its shortfall obligation was excused by reason of a "force majeure" in the form of an economic recession resulting in the decrease of solid waste production in 1995. Defendant argued that in 1992 MOSA had forgiven a shortfall for 1991 based upon the finding that reduction in waste production resulted from recessionary factors beyond defendant's control.

This argument fails for several reasons. Aside from the fact that defendant failed to provide the requisite notice of its intention to invoke the "force majeure" clause, it made no showing that the unique conditions and factors cited in support of the 1992 action prevailed in 1995, or that MOSA's voluntary decision to forgive the 1991 shortfall imposed any obligation to take similar action in the future. Most importantly, however, it is clear that defendant's inability to meet the 1995 GAT resulted from the Supreme Court's decision in *C & A Carbone v Clarkstown* (511 US 383), following which defendant voluntarily ceased enforcement of its similar flow-control ordinance, which in turn reduced defendant's solid waste deliveries to MOSA as waste haulers became free to choose other facilities with lower tipping charges. As such, defendant's inability to meet its GAT resulted from a change in the law, an event specifically excluded by the parties in the contractual definition of "force majeure".

The third affirmative defense asserted essentially that the invalidation of its flow-control ordinance by the decision in *C & A Carbone (supra)* rendered performance under the contract

impossible. Relief from performance of a contract upon this ground must be based upon destruction of the subject matter of the contract or the means of performance, and must result from an event that could not be anticipated, foreseen or guarded against in the contract. That a change in law affecting the performance of the contract was, in fact, foreseeable is clear from the parties' exclusion of such event in the definition of "force majeure". Moreover, defendant made no showing that it had attempted to satisfy its GAT requirements by pursuing alternative methods (*cf.*, *USA Recycling [A.A. & M. Carting Serv.] v Town of Babylon*, 66 F3d 1272, *certs denied* 517 US 1135, 1150).

The provision of the agreement invoked in defendant's fourth affirmative defense fails to support same, as it relates to cooperation between the parties in effecting the initial transition of solid waste management services thereunder and ongoing support of MOSA's efforts. No corresponding duty is imposed on MOSA to assist the counties in meeting their GAT obligations.

As to the second affirmative defense, an alleged improper calculation by MOSA of defendant's 1995 GAT, Supreme Court properly rejected defendant's contentions that the GAT should have been reduced because of a reduction in the tipping fee based upon economic factors and based upon the decrease in solid waste delivered to MOSA as a result of the impact of the *C & A Carbone* decision (*supra*). Any change in the tipping fee has no relevance to the calculation of the GAT. The agreement reflects the parties' clear acknowledgement of the necessity of establishing GAT figures to ensure adequate funding and operation of MOSA's facilities, and equally clearly established that the parties intended the GAT to be calculated according to total waste generated within the county and not, as defendant contends in the wake of the *C & A Carbone* decision, according to waste actually delivered.

Cardona, P. J., Mercure, White and Carpinello, JJ., concur. Ordered that the order entered December 18, 1996 is modified, on the law, without costs, by reversing so much thereof as denied the request by plaintiff Montgomery-Otsego-Schoharie Waste Management Authority for counsel fees; said request granted, and, as so modified, affirmed. Ordered that the order entered June 13, 1997 is affirmed, without costs.