OPINION OF THE COURT
Carolyn E. Demarest, J.
“Second third-party defendants” Hi-Lume Corporation (motion sequence [MS] 18), Maspeth Steel Fabricators, Inc. (MS19), M&D Fire Door (M&D Installers) (MS20), Roz-A-Lite Electrical Contracting, Inc. (MS21), Williamsburg Parquet Flooring Co. (MS22), Dynamic Sheet Metal Ltd. (MS23), KNS Building Restorations, Inc. (KNS Building) (MS24), Capitol Fire Sprinkler Co., Inc. (MS25), H2L Millwork Construction Corp. (H2L Millwork) (MS26), Imperial Painting & Fireproofing, Inc., doing business as The Gold Group (MS27), Stucco Specialists, Inc. (MS28), ADS Windows, Inc. (MS29), Doortec Architectural Metal & Glass (MS30), Brook Plumbing & Heating Corp. (MS31) and Castle Construction Group, Inc. (MS32) move to dismiss the amended third-party complaint (Sponsors’ complaint) of 125NorthlO, LLC, Savanna Services L.L.C., Christopher Schlank, Nicholas Bienstock, Peter Petron, John Fraser, and Investcorp International Holdings Inc. (collectively, Sponsors) against Ryder Construction, Inc.,[1] for failure to state a cause of action, and the second third-party complaint against them (Ryder complaint)[2] by Ryder Construction, Inc. (Ryder), for failure to state a cause of action and the causes of action having no merit (collectively, motion sequences 18-32 are *589 referred to as the motions).[3] Ryder also moves (MS16) for default judgment, pursuant to CPLR 3215, against Mulroy Masonry, Inc. and Shabco Construction Services, Inc.[4]
Background
The plaintiff Board of Managers of the 125 North 10th Condominium brought this action, inter alia, against the Sponsors which have third-party claims against, among other parties, Ryder, which was the construction manager and general contractor on the construction of 125 North 10th Street, Brooklyn, New York, an 86-unit luxury condominium (the project).[5] The Ryder complaint seeks indemnification and the cost of defending the Sponsors’ complaint from numerous subcontractors on the project. Fifteen subcontractors moved to dismiss the Sponsors’ complaint against Ryder, to dismiss the three causes of action alleged in the Ryder complaint against them, and any cross claims that were asserted by any of the other subcontractor defendants.[6] The two causes of action in the Sponsors’ complaint are for common-law indemnification and breach of contract. The three causes of action in the Ryder complaint are for declaratory judgment that the subcontractor defendants are contractually required to defend and indemnify Ryder against all or some of the claims asserted by the Sponsors, contractual indemnification, and common-law indemnification. The numerous cross claims by the defendants in the Ryder complaint sound in indemnity, contribution, and breach of contract.
Discussion
As each of the movants has moved to dismiss the cross claims asserted against it, and there is no opposition to that aspect of *590 the motions, the motions are granted to the extent that all cross claims asserted against the movants in the answers to the Ryder complaint are dismissed.
The first cause of action in the Ryder complaint seeks a declaratory judgment that, pursuant to the trade contracts between the subcontractors and Ryder, each of the movants is obligated to defend and indemnify Ryder with respect to the Sponsors’ claims[7] against Ryder, including reimbursement for all past, present and future attorney’s fees and costs in defending the claims of construction defects, as well as indemnification to Ryder for all damages recovered against Ryder for construction defects in connection with the work performed on the project. In motion sequences 24 and 26 (citing to BGW Dev. Corp. v Mount Kisco Lodge No. 1552 of Benevolent & Protective Order of Elks of U.S. of Am., 247 AD2d 565, 568 [2d Dept 1998]), KNS Building and H2L Millwork argue that the first cause of action must be dismissed as it is duplicative of Ryder’s second cause of action for contractual indemnification. Although Ryder does not address this issue in opposition to MS24, in opposition to MS26 Ryder argues that “the declaratory judgment action is separate and apart from the causes of action for contractual and common law indemnification as it seeks the Court’s intervention in determining the rights and other legal relations of the parties to a justiciable controversy. See CPLR § 3001.” However, Ryder has not identified what other “rights” and “legal relations” it seeks to have the court determine. As the first cause of action seeks a declaratory judgment for contractual indemnification, and the second cause of action seeks contractual indemnification based upon the same contracts and claims of damages, the first cause of action is duplicative of the second cause of action and is unnecessary (see BGW, 247 AD2d at 568). Accordingly, the first cause of action in the Ryder complaint is dismissed as duplicative (see id.).
The second cause of action in the Ryder complaint seeks contractual indemnification from each of the subcontractors in the event that the Sponsors recover any judgment against Ry *591 der and reimbursement for all attorney’s fees and costs in this litigation. In MS20, M&D Installers move for summary judgment dismissing the second cause of action and argue that the only written contract it entered with Ryder is a purchase order which does not contain an indemnification provision. In opposition to M&D Installers’ motion, Ryder argues that a certificate of liability insurance, acquired on behalf of M&D Installers, names Ryder as an additional insured party “as required by written contract.” Ryder argues that “it was the intention and understanding of all parties that there was a defense and indemnification requirement as it pertains to the subject construction project” and that it is premature to dismiss the action as discovery is not complete.[8]
In order to obtain summary judgment, the movant must establish its cause of action or defense sufficiently to warrant a court’s directing judgment in its favor as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; CPLR 3212 [b]). Where the proponent of the motion makes a prima facie showing of entitlement to summary judgment, the burden shifts to the party opposing the motion to demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action (Vermette v Kenworth Truck Co., 68 NY2d 714, 717 [1986]). The parties’ competing contentions are viewed in the light most favorable to the party opposing the motion (Marine Midland Bank v Dino & Artie’s Automatic Transmission Co., 168 AD2d 610, 610 [2d Dept 1990]). Mere conclusory statements, expressions of hope, or unsubstantiated allegations are insufficient to defeat the motion (Gilbert Frank Corp. v Federal Ins. Co., 70 NY2d 966 [1988]). M&D Installers has demonstrated that the purchase order entered between the parties does not contain an indemnity provision. Accordingly, the burden shifts to Ryder to demonstrate the existence of a factual issue (see Vermette, 68 NY2d at 717). Ryder has not contested M&D Installers’ contention that there are no contracts between the parties with an indemnity provision. Ryder’s counsel’s contention that “it was the intention and understanding of all parties that there was a defense and indemnification requirement” is insufficient to *592 raise a triable issue of fact in light of the written purchase order and Ryder has not offered an evidentiary basis to suggest that discovery may lead to evidence that is exclusively within the control of M&D Installers (see Gilbert Frank Corp., 70 NY2d at 966; Davila v New York City Tr. Auth., 66 AD3d 952, 953 [2d Dept 2009]). Accordingly, the second cause of action in the Ryder complaint is dismissed as to M&D Installers.
With the exception of M&D Installers, each of the movants entered into an American Institute of Architects (AIA) “Standard Form of Agreement Between Contractor and Subcontractor”[9] with Ryder. Although the identities of the subcontractors, and the work that was to be performed, was modified for each subcontract, two identical indemnification provisions, section 4.6.1 and a paragraph under section 13.1, are found in each of the subcontracts. Accordingly, for the purposes of this motion, the subcontracts are interchangeable and are referred to as the “Subcontract.” Section 4.6.1 (first indemnity provision) states:
“To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Architect, Architect’s consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney’s fees, arising out of or resulting from performance of the Subcontractor’s Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor’s Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 4.6.” (Emphasis added.)
Article 13 of the subcontract, captioned “INSURANCE AND BONDS,” which requires the subcontractors to purchase and *593 maintain various forms of insurance, including commercial general liability (CGL) insurance, includes the following provisions under the subcaption “INDEMNIFICATION AGREEMENT” (second indemnity provision):
“To the fullest extent permitted by law, Subcontractor shall defend, indemnity [sic] and hold harmless Owner, Contractor, Architect, and consultants, agents, and employees of any of them (individually or collectively, ‘indemnity’ [sic]) from and against all claims, damages, liabilities, losses, and expenses, including but not limited to attorneys’ fees, arising out of or in any way connected with the performance or lack of performance of the work under the agreement and any change orders or additions to the work included in the agreement, provided that any such claim, damage, liability, loss or expense is attributable to bodily injury, sickness, disease or death, or physical injury to tangible property including loss of use of that property, or loss of use of tangible property that is not physically injured, and caused in whole or in part by any actual or alleged:
“- Act or omission of the Subcontractor or anyone directly or indirectly retained or engaged by it or anyone for whose acts it may be liable; or
“- Violation of any statutory duty, regulation, ordinance, rule, or obligation by an indemnitee provided that the violation arises out of or is in any way connected with the Subcontractor’s performance or lack of performance of the work under the agreement.

“The Subcontractor’s obligations under this Article shall apply regardless of whether or not any such claim, damage, liability, loss or expense is or may be attributable to the fault or negligence of the Contractor.

“In the event that an Indemnitee is determined to be any percent negligent pursuant to any verdict or judgment, then, in addition to the foregoing, Subcontractor’s obligation to indemnify the Indemnitee for any amount, payment, judgment, settlement, mediation or arbitration award shall extend only to the percentage of negligence of the Subcontractor and anyone directly or indirectly engaged or retained by it and anyone else for whose acts the *594 Subcontractor is liable.” (Emphasis added.)
The movants argue that the second cause of action must be dismissed as the indemnity provisions do not require the subcontractors to indemnify Ryder for claims arising out of the contractor or subcontractor’s allegedly faulty workmanship. The movants argue that the first indemnity provision, which specifically excludes the subcontractor’s work with the phrase “(other than the Work itself),” applies to third-party property damage which is not alleged in the underlying actions against the Sponsors or Ryder. The movants further argue that the second indemnity provision, which does not include the specific exclusion of “(other than the Work itself),” is included in the insurance section of the subcontract and only relates to claims that would be covered by a CGL policy, which policies do not provide coverage for economic loss due to faulty workmanship. In motion sequence 28, Stucco Specialists also argues that the indemnity provisions are unenforceable as contrary to public policy, pursuant to General Obligations Law § 5-322.1, as they contain provisions that would require subcontractor indemnification even if Ryder were found to be negligent. In opposition to the motion, Ryder argues that the indemnity provisions are not limited to third-party property damage or insurance coverage and that the provision is not unenforceable under the General Obligations Law as Ryder has not been found to be negligent.
Giving the subcontract its plain and ordinary meaning, the first indemnity provision is clearly intended to cover situations where the indemnitees are sued by a third party for physical injury or property damage occurring as a result of the subcontractor’s work, but not when the claim challenges the subcontractor’s work itself (see Board of Mgrs. of the Baxter St. Condominium v Baxter St. Dev. Co. LLC, 2013 NY Slip Op 30209 [U], *6 [Sup Ct, NY County 2013] [holding that an indemnity provision, nearly identical to the first indemnity provision, which included the exclusion “(other than the Work itself),” did not apply to claims challenging the work itself]; W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]). Here, Ryder is not being sued by the Sponsors for personal injury or property damage arising out of the construction. The Sponsors’ complaint consists of causes of action for indemnification with respect to defects in the design and construction alleged by the plaintiff and Ryder’s alleged failure to oversee and develop the project. Accordingly, as the claims against Ryder challenge the *595 movants’ work itself, as well as Ryder’s failure to perform under its contract, Ryder cannot maintain a cause of action for contractual indemnification based upon the first indemnification provision (see Board of Mgrs. of the Baxter, 2013 NY Slip Op 30209[U]; W.W.W. Assoc., 77 NY2d at 162).[10]
The second indemnification provision, however, does not contain an exclusion for “the work itself.” The movants argue that since the second indemnification provision falls within section 13.1 of the subcontract, which requires the movants to purchase and maintain various forms of insurance, the second indemnification provision only applies to claims that would be covered by a CGL policy. Further, the movants contend that since workmanship is not covered under CGL policies (citing Savik, Murray & Aurora Constr. Mgt. Co., LLC v ITT Hartford Ins. Group, 86 AD3d 490 [1st Dept 2011]), the second indemnification provision is inapplicable to the claims asserted against Ryder as they arise out of the allegedly faulty workmanship. The movants also cite to Hooper Assoc. v AGS Computers (74 NY2d 487, 491 [1989]) to argue that, even if not limited to the insurance section, the first indemnification provision must prevail over the second indemnification provision because the subcontract “must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.” The movants argue that since the first indemnification provision evidences the parties’ intent to exclude indemnification with respect to “the work itself,” a broader construction of the second indemnification provision would add a duty that the parties did not intend to be assumed. In opposition, Ryder argues that the insurance company’s obligations have no bearing on the subcontractors’ obligation to defend based upon the contractual language. Further, Ryder argues that pursuant to Hooper, there are no ambiguities in the subcontract and that the parties intended for the movants to provide for indemnification including the claims against the work itself.
In the 15 separate motions on this issue, neither Ryder, nor the movants, have cited a single judicial decision that addresses whether the second indemnity provision, which ap *596 pears to be a standard provision in a contract used nationwide, applies to claims that arise from a subcontractor’s faulty workmanship in the work product itself. This court is also unable to find a decision in which this issue has been addressed. Accordingly, this appears to be a case of first impression as to this provision in AIA document A401-1997.
In order for Ryder to have a viable cause of action for contractual indemnification under the second indemnity provision, the claims against the Sponsors must be attributable to the subcontractors’ performance, or lack of performance of the work under the subcontract, that resulted in: “bodily injury, sickness, disease or death, or physical injury to tangible property including loss of use of that property, or loss of use of tangible property that is not physically injured.” As there are no allegations of bodily injury, sickness, disease or death, the claims alleged must be for “physical injury to tangible property including loss of use of that property” or “loss of use of tangible property that is not physically injured” for the second indemnification provision to apply in this action.
The court agrees with the movants that there is an apparent conflict between the first and second indemnity provisions. The first indemnity provision is found within article 4 of the subcontract, which describes the subcontractor’s role and responsibilities in constructing the project. Section 4.6, identified solely as “Indemnification,” describes the obligation to indemnify with respect to injury to third parties to whom Ryder is held liable. However, the second indemnity provision is found in article 13 of the subcontract, which describes the insurance and bonds required to be maintained by the subcontractors on the project, at the end of a list of the various forms of insurance required to be held, under the title “Indemnification Agreement.” While the first indemnification provision clearly excludes indemnification for claims that arise out of faulty workmanship by the subcontractor, the second indemnification provision does not clearly do so.
“[W]here two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect” (Moulton Paving, LLC v Town of Poughkeepsie, 98 AD3d 1009, 1012 [2d Dept 2012] [emphasis and internal quotation marks omitted], quoting LI Equity Network, LLC v Village in the Woods Owners Corp., 79 AD3d 26, 35 [2d Dept 2010]; see Perlbinder v Board of Mgrs. of 411 E. 53rd St. Condominium, 65 AD3d 985, 987 [1st Dept 2009]; G&B Photogra *597 phy v Greenberg, 209 AD2d 579, 581 [2d Dept 1994]). In this case, the first and second indemnification provisions can be reconciled and both can be given effect by reading them in context. In Hooper (74 NY2d at 491-492), the Court of Appeals held:
“Words in a contract are to be construed to achieve the apparent purpose of the parties. Although the words might ‘seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view.’ This is particularly true with indemnity contracts. When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed. The promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances. Inasmuch as a promise by one party to a contract to indemnify the other for attorney’s fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney’s fees, the court should not infer a party’s intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise.” (Citations omitted.)
The ambiguous second indemnification provision, which does not mention an exclusion for claims arising out of a subcontractor’s faulty work, is listed below the CGL insurance section of the subcontract and uses language that is nearly identical to the definition of “property damage” found in CGL policies.[11] Moreover, “[c]ourts have held that commercial general liability (CGL) policies do not insure against faulty workmanship in the work product itself” (J.J. White Corp. v Columbia Cas. Co., 105 AD3d 531, 532 [1st Dept 2013], citing George A. Fuller Co. v United States Fid. & Guar. Co., 200 AD2d 255, 259 [1st Dept 1994], lv denied 84 NY2d 806 [1994]). Accordingly, excluding the work itself, within the context of the insurance indemnifica *598 tion provisions, would be superfluous as it would not be covered under a CGL policy. Limiting the second indemnification provision to the terms of mandated insurance policies which precede the second indemnification provision in the subcontract is thus consistent with the intent evident in the subcontract and permits reconciliation of the two, apparently conflicted, indemnification provisions (see Hooper, 74 NY2d at 491). Construing the second indemnification provision to include damages arising out of claims relating to performance of the “the work itself” would improperly add a duty that is not clearly implied from the language of the entire agreement and which is expressly excluded in the first indemnification provision, thereby creating an irreconcilable inconsistency in the subcontract (see Hooper, 74 NY2d at 491-492). Given this inconsistency, and the structure of the subcontract, if the second indemnification provision had been intended to cover claims arising out of the faulty work itself, it would have included words to that effect. Further, “[i]t is axiomatic that courts construing contracts must give ‘ “specific terms and exact terms . . . greater weight than general language” ’ ” (County of Suffolk v Alcorn, 266 F3d 131, 139 [2d Cir 2001], quoting Aramony v United Way of Am., 254 F3d 403, 413 [2d Cir 2001]; see Restatement [Second] of Contracts § 203 [c] [1981]; Montgomery-Otsego-Schoharie Solid Waste Mgt. Auth. v County of Otsego, 249 AD2d 702, 703 [3d Dept 1998]). As the first indemnification provision is more specific than the second, its intention must be given greater weight.
Accordingly, upon review of the entire subcontract, the court finds the second indemnity provision was not intended to expand Ryder’s right to indemnification to claims against faulty workmanship in the subcontractors’ work product itself. Rather, the second indemnity provision was intended to indemnify Ryder against damage to something other than the work product caused by the subcontractor’s failure of performance. As Ryder seeks indemnification for claims of faulty workmanship in the movants’ work product itself, the motion to dismiss the second cause of action for contractual indemnification is granted (see I.J. White Corp., 105 AD3d at 532; Hooper, 74 NY2d at 491; Moulton Paving, 98 AD3d at 1012; County of Suffolk, 266 F3d at 139).
It is noted that the second indemnification provision is not, as movants argue, invalidated pursuant to General Obligations Law § 5-322.1 as the statute clearly relates to “negligence” *599 while this action is for economic loss as a result of a breach of contract. Moreover, the second indemnification provision is followed by the following caveat:
“In the event that an Indemnitee is determined to be any percent negligent pursuant to any verdict or judgment, then, in addition to the foregoing, Subcontractor’s obligation to indemnify the Indemnitee for any amount, payment, judgment, settlement, mediation or arbitration award shall extend only to the percentage of negligence of the Subcontractor and anyone directly or indirectly engaged or retained by it and anyone else for whose acts the Subcontractor is liable.”
As the second indemnification provision does not purport to indemnify Ryder for its own negligence, and the duty to indemnify is limited to the extent of subcontractor’s own negligence, it is not invalid pursuant to General Obligations Law § 5-322.1 (see Brooks v Judlau Contr., Inc., 11 NY3d 204, 207 [2008]; Kinney v Lisk Co., 76 NY2d 215, 218-219 [1990]).
The movants argue that the third cause of action for common-law indemnification in the Ryder complaint must be dismissed as Ryder did not delegate exclusive responsibility over the performance of its contract with the Sponsors to the movants. In opposition to the motions, Ryder argues that it delegated exclusive responsibility for the subcontract work to each of the subcontractors and that it is premature to dismiss the cause of action where there are triable issues of fact concerning the degree of fault, if any, attributable to each party.
“The principle of ‘common-law, or implied indemnification, permits one who has been compelled to pay for the wrong of another to recover from the wrongdoer the damages it paid to the injured party.’ The party seeking indemnification ‘must have delegated exclusive responsibility for the duties giving rise to the loss to the party from whom indemnification is sought,’ and must not have committed actual wrongdoing itself” (Tiffany at Westbury Condominium v Marelli Dev. Corp., 40 AD3d 1073, 1077 [2d Dept 2007] [citations omitted], quoting 17 Vista Fee Assoc. v Teachers Ins. & Annuity Assn. of Am., 259 AD2d 75, 80 [1st Dept 1999]).
Historically, third-party actions were narrowly construed as limited to the claim of plaintiff in the action and the obligation of the third-party defendant to indemnify another held liable *600 for the plaintiff’s loss (see generally George Cohen Agency v Donald S. Perlman Agency, 51 NY2d 358, 365 [1980]). That view has been relaxed substantially such that it is now recognized that, to the extent that the plaintiff was damaged as a result of the third-party defendant subcontractor’s faulty workmanship, the inclusion of all parties in one action, and before one court, is appropriate as it prevents the judicially inefficient result of multiple actions before multiple courts. “[A]lthough third-party practice has its origins in strict indemnity, it has grown beyond its early limitations and should now be seen primarily as a tool for economical resolution of interrelated lawsuits” (id. at 364-365; see also Qosina Corp. v C & N Packaging, Inc., 96 AD3d 1032, 1035 [2d Dept 2012]; Vincent C. Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C1007:3).
The motion to dismiss Ryder’s third cause of action for common-law indemnification is denied as the Ryder complaint has sufficiently alleged that the subcontractors assumed full responsibility for the construction work that each subcontractor performed and the materials they supplied and there are issues of fact as to whether Ryder was responsible for any of the allegedly faulty work (see Tiffany, 40 AD3d at 1077; 17 Vista, 259 AD2d at 80). The movants’ contention that Ryder could not have delegated exclusive responsibility to the subcontractors is unavailing as discovery has not been completed and, “ ‘[a] contract for construction work with a general contractor or construction manager is not, in itself, sufficient to establish that the general contractor or construction manager actually supervised or had direct control’ over the work which ultimately damaged the plaintiff” (Caldwell v Two Columbus Ave. Condominium, 2010 NY Slip Op 33213[U], *35 [Sup Ct, NY County 2010], quoting McCarthy v Turner Constr., Inc., 24 Misc 3d 1245[A], 2009 NY Slip Op 51889[U], *4 [Sup Ct, NY County 2009], affd 72 AD3d 539 [1st Dept 2010]; see Kwang Ho Kim v D & W Shin Realty Corp., 47 AD3d 616, 620 [2d Dept 2008]). Further, to the extent that the plaintiff, Sponsors, or Ryder were damaged as a result of the subcontractors’ faulty workmanship, the inclusion of all parties in one action, appearing before one court, is appropriate as it prevents the judicially inefficient result of multiple actions before multiple courts and the potential for inconsistent results {see Vincent C. Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C 1007:3). Accordingly, the motions to *601 dismiss the third cause of action in the Ryder complaint for common-law indemnification are denied.
Pursuant to CPLR 1008, the movants also move to dismiss the Sponsors’ complaint against Ryder. The first cause of action in the Sponsors’ complaint seeks common-law indemnification against Ryder as well as against architects, a structural engineer, a mechanical engineer, and a building envelope consultant. The first cause of action alleges that the Sponsors delegated the “exclusive responsibility” for the design and construction of the project to the third-party defendants, including Ryder. The Sponsors seek indemnity in the event they are found to be liable to the plaintiff, but any loss alleged by the plaintiff is found not to have been caused by the conduct of the Sponsors. The second cause of action in the Sponsors’ complaint alleges breach of contract against Ryder. The movants argue that the Sponsors’ complaint must be dismissed as to Ryder as the allegations are vague and conclusory. In opposition to the motions, the Sponsors argue that they have sufficiently alleged third-party causes of action for common-law indemnification and breach of contract and the pleadings are to be liberally construed.
In considering a motion to dismiss for failure to state a cause of action under CPLR 3211 (a) (7), the pleading is to be afforded a liberal construction (CPLR 3026), and the court should accept as true the facts alleged in the complaint, accord plaintiff the benefit of every possible inference, and only determine whether the facts, as alleged, fit within any cognizable legal theory (see Hurrell-Harring v State of New York, 15 NY3d 8, 20 [2010]; Leon v Martinez, 84 NY2d 83, 87-88 [1994]). “The liability to be imposed upon a third-party defendant in a third-party action commenced pursuant to CPLR 1007 should ‘arise from or be conditioned upon the liability asserted against the third-party plaintiff in the main action’ ” (Lucci v Lucci, 150 AD2d 649, 650 [2d Dept 1989], quoting BBIG Realty Corp. v Ginsberg, 111 AD2d 91, 93 [1st Dept 1985]; see Qosina, 96 AD3d at 1035).
The motions to dismiss the first cause of action in the Sponsors’ complaint are denied as Sponsors have sufficiently alleged a third-party cause of action for common-law indemnification, including the delegation of exclusive responsibility for the design and construction of the project, and the Sponsors have denied any wrongdoing on their part (see Tiffany, 40 AD3d at 1077; 17 Vista, 259 AD2d at 80). The motions to dismiss the *602 second cause of action in the Sponsors’ complaint against Ryder are denied as the Sponsors have sufficiently alleged a third-party cause of action for breach of contract, including allegations that the Sponsors entered into a construction agreement with Ryder, the Sponsors paid Ryder pursuant to that contract, Ryder failed to perform under the contract, and damages may result from Ryder’s breach in the event that plaintiff succeeds in its first-party action against the Sponsors (see Legum v Russo, 133 AD3d 638, 639 [2d Dept 2015]; Lucci, 150 AD2d at 650). Accordingly, the movants’ motions to dismiss the Sponsors’ complaint against Ryder are denied.
In Ryder’s motion, dated April 7, 2015, it sought a default judgment based upon its third-party complaint dated February 7, 2014. However, that pleading is no longer viable as it was superseded by the amended third-party complaint dated March 4, 2015 (see Pourquoi M.P.S., Inc. v Worldstar Intl., Ltd., 64 AD3d 551, 551-552 [2d Dept 2009]; Halmar Distribs. v Approved Mfg. Corp., 49 AD2d 841 [1st Dept 1975]). Accordingly, Ryder’s motion for default judgment is denied without prejudice.
Conclusion
Accordingly, “Second third-party defendants” Hi-Lume Corporation, Maspeth Steel, M&D Installers, Roz-A-Lite, Williamsburg Parquet, Dynamic Sheet Metal, KNS Building, Capitol Fire, H2L Millwork, Imperial Painting, Stucco Specialists, ADS Windows, Doortec, Brook Plumbing and Castle Construction’s motions to dismiss the cross claims in the answers to the “second third-party complaint” by Ryder, and the first and second causes of action in the “second third-party complaint” by Ryder, are granted and the motions to dismiss the third cause of action in the “second third-party complaint” by Ryder, and to dismiss the Sponsors’ third-party complaint against Ryder, are denied. Ryder’s motion for default judgment is denied without prejudice.

. Pursuant to CPLR 1008, a third-party defendant has standing to move to dismiss, on behalf of a defendant/third-party plaintiff, against a plaintiff (see Stamboulis v Stefatos, 256 AD2d 328 [2d Dept 1998]; Muniz v Church of Our Lady of Mt. Carmel, 238 AD2d 101 [1st Dept 1997]; Cleary v Starkweather, 165 AD2d 967 [3d Dept 1990]).

. By order dated February 10, 2015, this court dismissed the plaintiff’s complaint against Ryder in its entirety but converted the defendant Sponsors’ cross claims, for contractual and common-law indemnification against Ryder, into third-party claims (Board of Mgrs. of the 125 N. 10th Condominium v 125 N. 10, LLC, Sup Ct, Kings County, Feb. 10, 2015, Demarest, J., index No. 14982/12). Ryder then filed an “Amended Third Party Complaint” against a number of subcontractors which referred to Ryder as “Second Third-Party Plaintiff” and the subcontractor defendants as “Second Third-Party Defendants.” It is noted that this does not appear to be a “second third-party complaint” and should more appropriately be referred to as a fourth-party complaint. However, for the purposes of this decision, this pleading is referred to as the “Ryder complaint.”

. Each motion seeking to dismiss the Sponsors’ complaint is pursuant to CPLR 3211. Each motion seeking to dismiss the Ryder complaint is pursuant to both CPLR 3211 and 3212 except for M&D Installers’ motion (MS20) which was solely for summary judgment pursuant to CPLR 3212.

. Ryder’s default motions against Williamsburg Parquet Flooring Co. and Capitol Fire Sprinkler Co., Inc. were withdrawn.

. For a more detailed history of this action, see Board of Mgrs. of the 125 N. 10th Condominium v 125 N. 10, LLC (45 Misc 3d 1215[A], 2014 NY Slip Op 51593[U] [Sup Ct, Kings County 2014]).

. There is significant overlap in the motions due to the identical causes of action alleged and the same general contractor/subcontractor relationship between the parties. Most of the motions explicitly rely on MS18 by Hi-Lume Corporation as it was the first party to move to dismiss the Sponsors’ and Ryder complaints.

. Although paragraph 90 of the Ryder complaint seeks indemnification “with regard to the Board’s claims against Ryder,” the Board’s claims against Ryder were previously dismissed (see n 2). The remainder of the first cause of action seeks indemnification with respect to the claims asserted by the “Sponsor defendants.” Accordingly, it is presumed that Ryder seeks indemnification with respect to the Sponsors’ claims against Ryder.

. It is noted that Ryder argues that all of the present motions to dismiss are premature as discovery is not complete. However, Ryder does not identify what discovery is not in its possession or is in the sole possession of another party.

. The contract is identified as “Document A401-1997.

. Ryder would not, however, be precluded from litigating a breach of contract claim against the movants based upon alleged deficiencies in their performance under the subcontracts since a breach of contract claim does not, like indemnity, involve “a complete shifting of responsibility to another” by a party which is, itself, without fault (see Vincent C. Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C1007:3 at 46 [2012 ed]).

. In I.J. White Corp. v Columbia Cas. Co. (105 AD3d 531, 531 [1st Dept 2013]), “property damage” was defined in the CGL policy at issue as “[p]hysical injury to tangible property, including all resulting loss of use of that property” and “loss of use of tangible property that is not physically injured.” This is almost identical to the language used in the second indemnification provision.