■ MTI/THE IMAGE GROUP, INC., Formerly Known as MODERN TELECOMMUNICATIONS, INC., et al., Plaintiffs-Appellants, v FOX STUDIOS EAST, INC., Formerly Known as FX STUDIOS, INC., et al., Respondents. (Action No. 1.) MTI/THE IMAGE GROUP, INC., Formerly Known as MODERN TELECOMMUNICATIONS, INC., Plaintiff-Appellant, v FOX, INC., Now Known as NEWS AMERICA INCORPORATED, et al., Respondents. (Action No. 2.) MTI/THE IMAGE GROUP, INC., Formerly Known as MODERN TELECOMMUNICATIONS, INC., et al., Appellants-Respondents, v FOX STUDIOS EAST, INC., Formerly Known as FX STUDIOS, INC., et al., Respondents-Appellants. ALL MOBILE VIDEO, INC., et al., Nonparty Respondents. MTI/THE IMAGE GROUP, INC., Formerly Known as MODERN TELECOMMUNICATIONS, INC., Appellant, et al., Plaintiff, v FOX STUDIOS EAST, INC., Formerly Known as FX STUDIOS, INC., et al., Respondents. ALL MOBILE VIDEO, INC., et

al., Nonparty Respondents. MTI/THE IMAGE GROUP, INC., Formerly Known as MODERN TELECOMMUNICATIONS, INC., et al., Appellants, v Fox STUDIOS EAST, INC., Formerly Known as FX STUDIOS, INC., et al., Respondents. ALL MOBILE VIDEO, INC., et al., Nonparty Respondents. [690 NYS2d 576] —Order, Supreme Court, New York County (Barry Cozier, J.), entered November 19, 1998, which granted defendants' motion for partial summary judgment to the extent of dismissing the fourth cause of action (fraud), partially dismissing the first cause of action (breach of the "Facilities and Services Agreement" and "Matching Right Agreement"), and declaring that the two agreements must be read as unified and coterminous, unanimously modified, on the law, to dismiss the first and third (tortious interference with contractual relations and prospective economic advantage) causes of action in their entirety, and the fifth cause of action (breach of the implied covenant of good faith and fair dealing) insofar as it relates to the Facilities and Services Agreement and Matching Right Agreement, and otherwise affirmed, without costs.

Appeal from orders, same court and Justice, entered January 8, 1999 and February 4, 1999 (upon reargument), which granted the motion of certain nonparty witnesses to quash various trial subpoenas, unanimously dismissed, without costs.

Appeal from order, same court (Lewis Friedman, J.), entered October 29, 1997, which denied plaintiffs' motion to amend the complaint to add various parties as defendants, and order, same court (Barry Cozier, J.), entered June 17, 1998, which granted the proposed defendants' motion to dismiss a separate complaint against them, unanimously dismissed, without costs.

Order, same court (Barry Cozier, J.), entered January 8, 1999, which denied plaintiffs' motion in limine to reform article 15 of the "Television Services Agreement", unanimously reversed, on the law, without costs, to reform the contract in accordance with the language proposed by plaintiffs.

These consolidated appeals arise out of three agreements signed by plaintiff MTI/The Image Group, Inc., formerly known as Modern Telecommunications, Inc. (MTI), and defendant Morning Studios, Inc. (Morning Studios) concerning temporary and permanent production facilities to be used by defendants (collectively Fox) to launch their new "fX" cable television network, and an alleged conspiracy between Fox and nonparties All Mobile, Chelsea Television Studios (CTS), Chelsea Television Studios, Inc. (CTS Inc.) and their principals (collectively, the Chelsea entities) to deprive MTI of its right to continued contractual relations with Fox.

MTI and Morning Studios entered into a Facilities and Services Agreement, pursuant to which MTI would provide a temporary production facility, along with equipment and technicians, for a term of one year, though terminable upon six months notice. The same day, the parties executed a "Side Letter", also referred to as the Matching Right Agreement, which gave MTI the right to match the lowest bona fide bid on a permanent production facility, which right was to be held in strict confidence by both parties. Within weeks, Fox sent a Request for Proposals for a permanent facility to five providers, including MTI and All Mobile. MTI bid $15 million, nonparty Unitel Video, Inc. (Unitel) bid $11.4 million, All Mobile (through CTS) bid $5.3 million, and two companies declined to submit bids. The principals of All Mobile and CTS submitted their bid apparently under the name CTS, but possibly also under the name CTS Inc., although the latter entity was not actually incorporated until two days later. Fox immediately notified MTI that the lowest bid was $5.3 million, and sent it a copy of CTS/CTS Inc.'s bid (with the name of the company redacted). Two days later, MTI matched the Chelsea entities' bid and executed a "Television Services Agreement" for the $5.3 million price; 10 months later, it commenced this action.

The fourth cause of action for fraud against Fox, alleging that MTI was induced to match an artificially low bid for the Television Services Agreement, was properly dismissed because, first, it is nothing more than a restatement of MTI's cause of action for breach of the Matching Right Agreement, but for which MTI would not have had the right to match the lowest bid and enter into the Television Services Agreement (see, *Non-Linear Trading Co. v Braddis Assocs.*, 243 AD2d 107, 118). Fox's alleged intention not to perform does not save the claim (see, *Hudson v Greenwich I Assocs.*, 226 AD2d 119, *lv denied* 89 NY2d 860). Second, MTI fails to demonstrate any actual out-of-pocket pecuniary damages, and merely seeks the $6 million in lost profit it would have gained had it been able to match Unitel's bid, rather than the Chelsea entities. Lost profits are not recoverable under a fraud theory (see, *Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421), and MTI actually admits to having earned a profit in excess of $1 million on the Television Services Agreement.

The first cause of action was also properly dismissed insofar as based on Fox's alleged breach of the Matching Right Agreement's confidentiality provision. The unrefuted deposition testimony establishes that the Chelsea entities did not know MTI had a matching right at the time they submitted

their bid, and MTI's mere assertion that the Chelsea officers are lying is insufficient to create a triable issue of fact (*see, Catlyn v Hotel & 33 Co.*, 230 AD2d 655, 656).

However, it was error not to have also dismissed that portion of the first cause of action alleging that the Chelsea entities' bid was not bona fide. Just as there is no evidence that the Chelsea entities knew of MTI's matching right, neither is there any evidence that Fox knew that the Chelsea entities were either unwilling or unable to perform the contract, assuming, arguendo, they were not. In fact, MTI itself notes that Fox had long-standing prior dealings with All Mobile, CTS and their principals and even considered them their "preferred studio facility and equipment provider". Thus, there was no reason for Fox to doubt that the bid was bona fide, and the fact that the All Mobile principals subsequently incorporated CTS (as CTS Inc.) actually indicates that they believed they would be awarded the contract.

The balance of the first cause of action, based on the right to make other matching bids, was properly dismissed since the Matching Right Agreement terminated on August 14, 1994, the same date that the Facilities and Services Agreement undisputedly terminated. The two agreements were executed on the same date, by the same parties and concerned the same subject matter. In addition, the Matching Right Agreement was expressly labeled a "Side Letter" to the Facilities and Services Agreement, made explicit reference to that agreement, required MTI not to be in breach of that agreement, and even incorporated "[a]ll capitalized terms not defined herein" (*see, Nau v Vulcan Rail & Constr. Co.*, 286 NY 188, 197; *BWA Corp. v Alltrans Express U. S. A.*, 112 AD2d 850, 852). Accordingly, the first cause of action should have been dismissed in its entirety.

The fifth cause of action, for breach of the implied covenant of good faith and fair dealing, should have been dismissed insofar as it relates to the Facilities and Services Agreement and Matching Right Agreement, as merely duplicative of the first cause of action (*see, Caruso v Allnet Communication Servs.*, 242 AD2d 484, 485).

It was also error not to dismiss the third cause of action, for tortious interference with contractual relations and prospective economic advantage, since all the named companies are affiliated with Morning Studio, either as parent or sister companies, and thus had an economic interest, MTI failed to demonstrate malice, and the corporate agents who allegedly committed the tort were simultaneously acting as agents (in negotiating and

executing the contracts) of Morning Studios, the signatory to the contracts (*see, Koret, Inc. v Christian Dior, S. A.*, 161 AD2d 156, 157, *lv denied* 76 NY2d 714; *Matter of Entertainment Partners Group v Davis*, 198 AD2d 63, 64).

In light of the foregoing, plaintiffs' appeals from the order of Justice Friedman, entered October 29, 1997, and the order of Justice Cozier, entered June 17, 1998, which denied them leave to amend the complaint to add a fraud claim as against proposed defendants All Mobile, CTS Inc. and Eric Duke, and which granted the proposed defendants' motion to dismiss the separate complaint against them asserting the same cause of action, respectively, should be dismissed as moot, as plaintiffs concede.

Similarly, plaintiffs' appeal from orders of Justice Cozier, entered January 8 and February 4, 1999 (upon reargument), which quashed certain document requests and limited the testimony of various nonparties connected with All Mobile, CTS and CTS Inc., should be dismissed as moot, since there are no causes of action remaining based upon an artificially low bid by the Chelsea entities or their principals.

Based upon the penultimate copy of the Television Services Agreement containing handwritten corrections by Pamela Wisne, an attorney for defendants, and her deposition testimony, Justice Cozier's order entered January 8, 1999 is reversed, and article 15 of the contract is reformed to include the language sought by plaintiffs. Concur—Ellerin, P. J., Tom, Wallach and Friedman, JJ.