Fred SAUER, Plaintiff,

v.

XEROX CORPORATION,
et al., Defendants.

No. 95–CV–6485L.

United States District Court,
W.D. New York.

April 25, 2000.

Gordon Locke, Gordon Locke Law Offices, New Rochelle, NY, for Fred Sauer, plaintiff.

John P. Coffey, Latham & Watkins, Newark, NJ, E. Marcellus Williamson, Latham & Watkins, Washington, DC, for Xerox Corp., defendant.

### DECISION AND ORDER

LARIMER, Chief Judge.

This action, which stems from a dispute over a lease agreement for certain commercial equipment, was commenced by plaintiff, Fred Sauer, in 1995. Since then, the court has issued several decisions addressing the merits of the parties' claims and counterclaims. As a result of those

prior decisions, at this point all of plaintiff's claims have been dismissed, and all that remains are six counterclaims asserted by defendant Xerox Corporation. Xerox has move for summary judgment on the first four of those counterclaims. Plaintiff has cross-moved for summary judgment dismissing all of Xerox's counterclaims.

## BACKGROUND

The facts of this case have been set forth in prior decisions of this court, *see Sauer v. Xerox Corp.,* 17 F.Supp.2d 193 (W.D.N.Y.1998); *Sauer v. Xerox Corp.,* 173 F.R.D. 78 (W.D.N.Y.1997); *Sauer v. Xerox Corp.,* 938 F.Supp. 155 (W.D.N.Y.1996), familiarity with which is assumed, and will not be repeated at length here. In short, Sauer and Xerox were parties to a sale/leaseback agreement ("the agreement" or "the lease") pursuant to which Xerox sold to, and then leased from, Sauer certain equipment constituting a photoreceptor line used in the production of photocopiers. When Xerox exercised its rights under the agreement to renew the agreement for two additional two-year periods, and to repurchase the equipment, the parties were unable to agree on the appropriate rental amount and repurchase price.

Under the terms of the lease, both parties retained private appraisers to establish those amounts. When this still failed to yield a figure acceptable to both sides, Xerox, again pursuant to the terms of the agreement, requested the American Arbitration Association ("AAA") to appoint an appraiser, whose determination was to be "binding and conclusive" on both parties. Affidavit of Anna Lincoln (Docket Item 262) Ex. 2 at 2.

Prior to the conclusion of the appraisal process, however, plaintiff commenced this lawsuit, notwithstanding his failure to comply with the agreement's notice and cure provisions, which permitted a party to sue only upon the occurrence of an "Event of Default," as that term is defined in the agreement, written notice of the default,

and an opportunity for the defaulting party to cure the default. Plaintiff asserted various contract and tort claims. Xerox subsequently asserted six counterclaims, based on theories of breach of contract, breach of implied duty of good faith and fair dealing, breach of the implied covenant of quiet enjoyment, fraud, and tortious interference with contract.

In a Decision and Order entered on August 18, 1998, I granted Xerox's motion for summary judgment on all of plaintiff's claims, and dismissed the complaint. Xerox now moves for summary judgment on four of its counterclaims.

## DISCUSSION

### I.  Breach of Contract Claims

Xerox has asserted two counterclaims based on a theory of breach of contract. First, Xerox alleges that Sauer breached his contractual obligation to participate in the procedures set forth in the lease for determining the fair market rental value of the equipment. In particular, Xerox notes that although the agreement contained a mandatory procedure for obtaining a binding appraisal of the market and rental values of the equipment, Sauer filed this action before that process was finished. In addition, despite the agreement's express provision allowing the parties to seek appointment of an arbitrator by the AAA, Sauer strenuously objected to Xerox's exercise of that right, and he refused to participate in the process. Xerox also alleges that Sauer attempted to manipulate the entire appraisal process in a number of ways, including using three different appraisers until Sauer finally got a figure sufficiently exaggerated to satisfy him, attempting to intimidate the AAA by threatening to hold it "strictly accountable" for any loss suffered by Sauer stemming from the AAA-appointed appraiser's report, and attempting to influence the independent appraiser through *ex parte* communications.

Xerox's second breach of contract claim is based on its allegation that Sauer failed to comply with the lease's notice and cure provisions. The lease provides that before the lessor, *i.e.* Sauer, could commence a judicial proceeding arising out of an alleged breach of the agreement, he first had to provide written notice to Xerox of the claimed default, after which Xerox would have a certain time period (the length of which would depend on the nature of the default) within which to cure the default. If Xerox failed to cure, the lessor could then declare the lease to be in default by giving written notice to that effect to Xerox. Only after all these conditions had been met could the lessor commence a court action. Lincoln Aff.Ex. 2 at §§ 20, 21. Xerox contends that these provisions amounted to a covenant not to sue Xerox unless and until each of those conditions had been met, and that Xerox is therefore entitled to damages, in the form of attorney's fees and litigation expenses, that it incurred as a result of Sauer's breach of that covenant.

In response to the first counterclaim, Sauer contends that he had no obligation to participate in the appraisal process. Since the appraisal did ultimately take place, Sauer reasons, Xerox suffered no harm in this regard. As for the second, Sauer responds that at most, the notice and cure provisions simply set forth certain conditions precedent to suit, not a covenant not to sue. Sauer asserts that nothing in the agreement indicates that the parties contemplated that a failure to comply with these provisions would give rise to an independent cause of action for breach of contract, or that a breach of those terms could give rise to liability for Xerox's attorney's fees.

■ The elements of a breach of contract claim under New York law are: (1) the existence of a contract; (2) performance by the party seeking recovery; (3) non-performance by the other party; and (4) damages attributable to the breach. *Marks v. New York Univ.*, 61 F.Supp.2d

81, 88 (S.D.N.Y.1999); *Air Support Int'l, Inc. v. Atlas Air, Inc.*, 54 F.Supp.2d 158, 165 (E.D.N.Y.1999). I find that although Xerox has established the first three of these elements, its contract claims fail because Xerox has not demonstrated that it has suffered any legally recoverable damages.

First, my August 18, 1998 Decision and Order makes clear that Sauer did not abide by his contractual obligations with respect to both the arbitration process and the notice and cure provision. At various points in that decision, for example, I stated: "Sauer abandoned those contractual provisions [for determining the rental amount] and commenced the lawsuit"; "Just because Sauer became disenchanted with the process, did not justify his unilateral decision to abort the procedure set forth in the Lease Agreement"; "Sauer's actions in bringing this claim were at odds with his commitment under the Lease Agreement to reach a renewal rent amount through the prescribed appraisal process"; Sauer "acted rashly and improvidently by aborting the appraisal process set forth in the Lease Agreement"; and "Sauer was obligated to abide by the Lease Agreement terms, including those which commit the lessor to the appraisal process and its results." *Sauer*, 17 F.Supp.2d at 197–99, 202.

With respect to the notice and cure provisions, my August 1998 Decision and Order stated the following: "prior to asserting this claim, Sauer not only failed to give Xerox timely written notice of an alleged Event of Default, as required by § 21(a), but no Event of Default, as defined in § 20, had even occurred"; Sauer's only written notice to Xerox "suffers from two impediments: because it was sent one day after suit was filed, it does not provide timely and proper written notice of Xerox' alleged Event of Default, as required by § 21(a) of the Lease Agreement. Moreover, as of that date no Event of Default, as defined in § 20(a) of the Lease Agreement, had yet occurred"; "Sauer's actions

violated the clear terms of the Lease Agreement"; "Sauer's failure to adhere to the notice and cure provisions"; and "Sauer failed to abide by the terms of the Lease agreement prior to asserting this claim." *Sauer*, 17 F.Supp.2d at 196–97, 199.

Those actions by Sauer were clearly in violation of his duties under the agreement. Since "[i]t is to avoid litigation that the parties make appraisal agreements final," *Moore v. Eadie*, 245 N.Y. 166, 171, 156 N.E. 653 (1927), Sauer could not simply choose to ignore the entire process and attempt to evade his obligation to be bound by that process by filing a lawsuit instead. *See Olympia & York OLP Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 214 A.D.2d 509, 511–512, 626 N.Y.S.2d 69 (1st Dep't 1995) ("A party to a dispute governed by an arbitration agreement may not unilaterally evade the stipulated forum and litigate the controversy"). In was in part for this reason that I dismissed Sauer's claims. *See Sauer*, 17 F.Supp.2d at 199.

The only damages claimed by Xerox allegedly arising out of these breaches, however, are attorney's fees incurred in this litigation, plus about $53,000 in interest (at a contractual rate of 12.5%) that Xerox paid to Sauer on back rent after the appraisal process was concluded. Xerox claims that this interest was incurred because of Sauer's delay of the appraisal process. I am not persuaded that these items are recoverable as damages for breach of contract under New York law.

Under the so-called "American rule," to which New York courts adhere, "an attorney's fee is an incident of litigation and is not recoverable by a prevailing party in a lawsuit unless such an award is authorized by agreement between the parties, statute, or court rule." *American Motorists Ins. Co. v. Trans Intern. Corp.*, 265 A.D.2d 280, 696 N.Y.S.2d 186 (2d Dep't. 1999); *accord Boltz v. Town of Portland*, 262 A.D.2d 1075, 691 N.Y.S.2d 833 (4th Dep't. 1999). I find no such authorization here.

■ Plainly, Xerox cannot and does not contend that recovery of attorney's fees is authorized here by statute or court rule. The only possible source of an entitlement to such fees, then, is the agreement itself. That agreement, however, does not indicate any intent on the part of the parties to provide for the recovery of attorney's fees as "damages" for either party's failure to comply with the notice and cure provisions or appraisal process.

■ Xerox contends that these provisions amounted to covenants not to sue, a breach of which may give rise to liability for attorney's fees. *See, e.g., Cefali v. Buffalo Brass Co.*, 748 F.Supp. 1011, 1026–28 (W.D.N.Y.1990). I do not view them as such, however. Nothing in the agreement indicates that the parties intended violations of these provisions to give rise to liability for attorney's fees or other litigation expenses. By their terms, these clauses are not promises not to sue; they merely set forth certain *preconditions* for filing suit. As such, they can (and indeed were, in this case) used as defenses against a suit, but noncompliance with their terms does not give rise to a separate cause of action to recover attorney's fees. Since covenants not to sue "are not looked upon with favor by the courts, are strictly construed against the party relying on them, and clear and explicit language in the agreements is required in order to absolve the promisee from liability," *Kaufman v. American Youth Hostels, Inc.*, 6 A.D.2d 223, 229, 177 N.Y.S.2d 587 (2d Dep't 1958), I am not persuaded that the clauses at issue are true covenants not to sue.

In support of its claims, Xerox has not cited a single case in which a court has found that a breach of clauses such as these gives rise to a cause of action under New York law. Although Xerox cites *Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.*, 865 F.2d 513, 514 (2d Cir.1989), for the proposition that a failure to provide a contractually-required notice and opportunity to cure gives rise to

liability for breach of contract, that is not what the court in *Filmline* held. Although the court did state that "since [the defendant's] purported termination [of the contract] was in violation of the terms of the Agreement, it was inoperative and the plaintiffs are entitled to recover for breach of contract," *id.* at 519, the purported termination was not the breach giving rise to liability. Rather, it was the defendant's repudiation of its obligation to purchase and distribute the motion picture at issue that rendered the defendant liable. *See id.* at 514.[1]

It should also be noted that even if a covenant not to sue existed here, that would not automatically entitle Xerox to attorney's fees. In *Artvale, Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002 (2d Cir.1966), the Second Circuit affirmed a district court's ruling that the defendant was not entitled to recover its litigation expenses, notwithstanding the existence of a covenant not to sue. Stating that "[t]he issue [of whether a party who has breached a covenant not to sue is liable for litigation expenses inflicted on his adversary] appears to hinge on what the parties intended by their contract," *id.* at 1008, the court stated:

> Certainly it is not beyond the powers of a lawyer to draw a covenant not to sue in such terms as to make clear that any

breach will entail liability for damages, including the most certain of all—defendant's litigation expense. Yet to distill all this out of the usual formal covenant would be going too far; its primary function is to serve as a shield rather than as a sword, often being employed instead of a release to avoid the common law rule with respect to the effect of a release on joint tort-feasors. In the absence of contrary evidence, sufficient effect is given the usual covenant not to sue if, in addition to its service as a defense, it is read as imposing liability only for suits brought in obvious breach or otherwise in bad faith—clearly not the situation here.

*Id.*

These statements indicate that even where a covenant not to sue exists, a party cannot recover its litigation expenses as damages for a breach unless the covenant clearly shows that such was the parties' intent, or the suit was brought "in obvious breach or otherwise in bad faith...." Even if Sauer's commencement of his lawsuit were deemed to be "in obvious breach" of the notice and cure provisions, however, as stated, they do not comprise a covenant not to sue, which are looked upon with disfavor and accordingly will not lightly be found to exist. As the Second

---

1. Xerox also cites *Riveredge Associates v. Metropolitan Life Ins. Co.*, 774 F.Supp. 897 (D.N.J.1991), in which the defendant had asserted a counterclaim alleging that the plaintiff, by commencing and maintaining a lawsuit based on its bad-faith interpretation of a partnership agreement, mortgage, and note, had breached the implied covenants of good faith and fair dealing contained in those agreements. The court agreed, finding that the defendant had stated a valid cause of action, that the plaintiff had breached the implied covenants, and that the defendant was entitled to recover its costs in defending the wrongful suit.

I decline to follow *Riveredge* in the case at bar, however. For one thing, the counterclaim in *Riveredge* did not arise out of an alleged breach of an appraisal clause or notice and cure requirements, but on the plaintiff's bad faith in making its substantive alle-

gations against the defendant. Second, the court there was applying New Jersey law, under which, according to the court, "a legal position asserted in bad faith may constitute a breach of contract even when that legal position, far from being frivolous, is actually supported by the express language of the contract." *Id.* at 900. I am aware of no such rule under New York law. In addition, the court in *Riveredge* stated that it had found "no decisional authority ... directly on point" to support its holding that the defendant could recover its litigation costs. *Id.* at 902. Finally, the court's ruling that the counterclaimant had stated a valid cause of action for breach of the implied covenant of good faith and fair dealing is inapplicable in the instant case, in which Xerox's claim based on that theory is subsumed within its breach of contract claims and must therefore be dismissed, as explained *infra.*

Circuit stated in *Artvale,* it is not difficult for lawyers to insert into an agreement language making clear that the parties intend for the bringing of a lawsuit in breach of the agreement to give rise to liability for attorney's fees. The parties here were both sophisticated in commercial matters, and they did not use any terms expressing such an intent.

■ I also find that Xerox's claim for interest that was allegedly incurred as a result of Sauer's delay of the appraisal process does not state a cognizable claim. Although the agreement did obligate the parties to abide by that process, nowhere does it state or imply that actions by one party that might prolong the process would render that party liable for accrued interest paid to it by the other party. The agreement contains other, separate sections dealing with interest, by the terms of which Xerox apparently considered itself bound, since it did pay Sauer interest at the contractual rate. Again, the plain language of the agreement itself betrays no intention to permit recoupment of those payments based on delays by Sauer.

Accordingly, I find that Xerox's allegations and the evidence in the record fail to supply the fourth element of Xerox's breach of contract claims: damages. Although in the ordinary sense of the term, Xerox could be said to have been "damaged" by having to incur litigation expenses, it is self-evident that the damages needed to satisfy this element of a breach of contract claim must be recoverable under New York law. Since a legal entitlement to the types of "damages" sought here could, under the facts of this case, arise only out of the lease agreement, and because that agreement contains no suggestion that the parties intended to make such damages available for the types of breach that occurred here, these claims must be dismissed.

## II. Breach of Covenant of Good Faith and Fair Dealing

Xerox also asserts a counterclaim alleging that Sauer breached his duty of good faith and fair dealing under New York law. The factual basis for this claim is the same as that underlying Xerox's claims regarding the appraisal process and notice and cure provisions. Sauer contends that although such a duty is implied by law in every contract, an alleged breach of that duty does not give rise to a separate, independent cause of action. Xerox disputes this assertion.

■ "[T]he duty of good faith and fair dealing between the parties to a contract is well recognized" under New York law. *Mark Patterson, Inc. v. Bowie,* 237 A.D.2d 184, 186, 654 N.Y.S.2d 769 (1st Dep't 1997) (citing *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) ("implicit in every contract is a covenant of good faith and fair dealing")). There is, however, ample authority that "a breach of that duty will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for a claim for breach of covenant of an express provision of the underlying contract." *Houbigant, Inc. v. ACB Mercantile, Inc.,* 914 F.Supp. 964, 989 (S.D.N.Y.1995) (citing *Geler v. National Westminster Bank USA,* 770 F.Supp. 210, 215 (S.D.N.Y.1991)). *See, e.g., New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 319, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) ("The cause of action [for breach of implied covenant of good faith and fair dealing] is duplicative of the first cause of action for breach of contract and should have been dismissed"); *accord Engelhard Corp. v. Research Corp.,* 268 A.D.2d 358, 702 N.Y.S.2d 255, 256 (1st Dep't 2000); *Business Networks of New York, Inc. v. Complete Network Solutions Inc.,* 265 A.D.2d 194, 696 N.Y.S.2d 433, 435 (1st Dep't 1999); *MTI/The Image Group, Inc. v. Fox Studios East, Inc.,* 262 A.D.2d 20, 23, 690 N.Y.S.2d 576 (1st Dep't 1999); *Ezrasons, Inc. v. American Credit Indemnity Co.,* 257 A.D.2d 447, 448, 683 N.Y.S.2d 264 (1st Dep't 1999); *Odingo v. Allstate Ins. Co.,* 251 A.D.2d 81, 672 N.Y.S.2d 727

(1st Dep't), *leave to appeal denied,* 92 N.Y.2d 810, 680 N.Y.S.2d 55, 702 N.E.2d 840 (1998); *Canstar v. J.A. Jones Const. Co.,* 212 A.D.2d 452, 453, 622 N.Y.S.2d 730 (1st Dep't 1995). In fact, in 1996 a district court in this circuit stated that in every case that it had found in which the plaintiff alleged both breach of contract and breach of a covenant of good faith and fair dealing, the court had dismissed the latter claim as duplicative. *See W.S.A., Inc. v. ACA Corp.,* Nos. 94–1868, 94–1493, 1996 WL 551599 at *9 (S.D.N.Y. Sept. 27, 1996), *modified on other grounds on reconsideration,* 1996 WL 735508 (S.D.N.Y. Dec.20, 1996). *See also Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983) (implied obligation is simply "in aid and furtherance of other terms of the agreement of the parties"); N.Y.U.C.C. § 1–203 Official Comment ("This section does not support an independent cause of action for failure to perform or enforce in good faith.... [T]he doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached)."

■ Although Xerox has cited cases in which courts have upheld causes of action for breach of the duty of good faith and fair dealing, *see BGW Development Corp. v. Mount Kisco Lodge No. 1552,* 247 A.D.2d 565, 566, 669 N.Y.S.2d 56 (2d Dep't), *leave to appeal denied,* 92 N.Y.2d 813, 681 N.Y.S.2d 474, 704 N.E.2d 227 (1998); *Fourth Branch Associates Mechanicville v. Niagara Mohawk Power Corp.,* 235 A.D.2d 962, 965, 653 N.Y.S.2d 412 (3d Dep't 1997), those cases appear to be in the minority. Moreover, as the court noted in *Fourth Branch Associates,* this implied covenant "is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement.'" 235 A.D.2d at 965–66, 653 N.Y.S.2d 412 (quoting *Jaffe v. Paramount Communications,* 222 A.D.2d 17, 22–23, 644 N.Y.S.2d 43 (1st Dep't 1996)). This suggests that such a claim may be brought, if at all, only where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain. To put it another way, a "party may maintain a claim for breach of the duty of fair dealing only if it is based on allegations different than those underlying the accompanying breach of contract claim." *Siradas v. Chase Lincoln First Bank, N.A.,* No. 98 Civ. 4028, 1999 WL 787658 *6 (S.D.N.Y. Sept.30, 1999).

In the case at bar, I see no difference between the factual underpinnings of Xerox's breach of contract claims and its claim for breach of the implied covenant of good faith and fair dealing. Indeed, the section of Xerox's memorandum of law discussing the latter claim mostly simply repeats and paraphrases its prior allegations regarding the contract claims. I therefore find that this claim is duplicative of Xerox's claims for breach of contract, and wholly subsumed within those two claims. Accordingly, Xerox's motion for summary judgment on this claim is denied, and Sauer's cross-motion for summary judgment on this claim is granted.

## III. Breach of Implied Covenant of Quiet Enjoyment

■ Under New York law, a covenant of quiet enjoyment is implied in every lease. The covenant "is simply a promise by the lessor that it will not interfere with the rights granted" under the lease. *Trans Pacific Leasing Corp. v. Aero Micronesia, Inc.,* 26 F.Supp.2d 698, 706 (S.D.N.Y.1998). In order to establish such a claim, the plaintiff must show actual or constructive eviction. *Saewitz v. Epstein,* 6 F.Supp.2d 151, 158–59 (N.D.N.Y.1998). Although claims brought under this theory usually arise in the context of a real prop-

erty lease, it appears that the doctrine does apply to chattel leases as well. *See, e.g., Colorado Interstate Corp. v. CIT Group/Equipment Financing, Inc.,* 993 F.2d 743, 747 (10th Cir.1993) (lease of computer equipment; applying Texas law); *In re Atlantic Computer Systems, Inc.,* 135 B.R. 463, 469 (Bankr.S.D.N.Y.1992) (same; applying New York law).

■ Xerox contends that Sauer breached this covenant because his interference with the appraisal process and his failure to comply with the agreement's notice and cure provisions have deprived Xerox of the beneficial use and enjoyment of its leasehold. After reviewing the record, however, I am not persuaded that Xerox has presented sufficient evidence to support this claim.

Although Sauer's conduct certainly caused some problems for Xerox, I fail to see how it interfered with Xerox's rights under the lease so as to give rise to a cause of action for breach of the implied covenant of quiet enjoyment. Xerox remained in possession of the equipment throughout its dispute with Sauer, and although Sauer may have caused some delays in the appraisal process, that process did proceed to a conclusion.

There is support for Xerox's position that it need not show actual abandonment or removal of the leased equipment to establish a claim for damages (as opposed to forgiveness of rent). *See Lovick v. Nigro,* No. LPLCV 940542473S, 1997 WL 112806 *8 (Conn.Super.Ct. Feb.24, 1997); *Hidden Ponds of Ontario, Inc. v. Hresent,* 209 A.D.2d 1025, 622 N.Y.S.2d 168 (4th Dep't 1994); *Benitez v. Restifo,* 167 Misc.2d 967, 641 N.Y.S.2d 523 (1996). Nevertheless, Xerox must show that Sauer's actions "substantially and materially deprived [Xerox] of the beneficial use and enjoyment" of the leased property. *Hidden Ponds,* 209 A.D.2d at 1027, 622 N.Y.S.2d 168. It has not done so. Xerox's argument that Sauer "prevented Xerox from obtaining the simple renewal and buy-out for which it had bargained," Xe-

rox's Memorandum of Law at 12, stretches this legal doctrine too far. To accept Xerox's argument would mean that virtually any landlord-tenant dispute could give rise to a claim for breach of the covenant of quiet enjoyment on the theory that the tenant or lessee did not get what it had bargained for. This claim is therefore dismissed as well.

## IV. "Bad Faith" Exception to American Rule

■ Although not pleaded as a separate cause of action, defendant also asserts an entitlement to attorney's fees under the "bad faith" exception to the American rule. As explained by the Second Circuit in *Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 344 (2d Cir.1986): "While the 'American Rule' is that the prevailing party in federal court litigation generally cannot recover attorneys' fees, the court does have the power to award attorneys' fees to a successful litigant when his opponent has commenced or conducted an action 'in bad faith, vexatiously, wantonly, or for oppressive reasons'" (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974)) (citation omitted).

■ The Second Circuit went on to state, however, that [t]o ensure ... that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both "clear evidence" that the challenged actions "are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes," and 'a high degree of specificity in the factual findings of [the] lower courts.' *Id.* at 344 (quoting *Weinberger v. Kendrick,* 698 F.2d 61, 80 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983)). More recently, the Second Circuit has observed that it has "interpreted the bad faith stan-

dard restrictively...." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir.2000).

Applying this standard here, I decline to award Xerox attorney's fees under the "bad faith" exception. Although I have found all of Sauer's claims to be meritless, I am not convinced that there is "clear evidence" that those claims were both "entirely without color" *and* that they were asserted only "for reasons of harassment or delay or for other improper purposes." Therefore, to the extent that Xerox moves for an award of attorney's fees based on the bad-faith exception to the American rule, its motion is denied.

## V. Tortious Interference with Contract

Sauer moves for summary judgment dismissing Xerox's fifth counterclaim, which alleges that Sauer tortiously interfered with Xerox's contract with Integrated Equipment Leasing Corporation ("Integrated"), which was the original purchaser/lessor under the lease agreement. Sauer acquired all of Integrated's interests in the agreement in 1995. Xerox alleges that Sauer interfered with the contract in various ways, generally by injecting himself into the appraisal process and pressuring Integrated's appraisers to arrive at an inflated figure.

█ "Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996) (citations omitted). I find that Xerox has not presented evidence showing the existence of genuine issues of fact as to this claim, and that the claim must be dismissed.

First, it is not clear what the alleged breach is here. Although Xerox alleges that Sauer caused delays in the appraisal process, and that due to his efforts, Integrated's appraisers came up with grossly inflated figures on the equipment's fair market and rental values, I do not see evidence that Integrated actually breached its obligations under the agreement.

The more fundamental problem with this claim, however, is that it suffers from the same defect as Xerox's breach of contract claims: there are no legally recoverable damages. The only damages claimed by Xerox are its attorney's fees (which cannot be attributed to Integrated's conduct), and the interest that Xerox paid to Sauer. For the same reasons given with respect to Xerox's claims for breach of contract, I find that the element of damages is missing here, and that this claim must be dismissed.

█ Xerox also argues that aside from compensatory damages, it is entitled to an award of punitive damages on this claim. "Under New York law, an injured party can recover punitive damages when the tortious act complained of involved a wanton or reckless disregard of the plaintiff's rights," *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70, 77 (2d Cir. 1986), *cert. denied*, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986), or where the liable party's actions amount to "gross, wanton, or willful fraud or other morally culpable conduct." *Cohen v. Davis*, 926 F.Supp. 399, 405 (S.D.N.Y.1996); *see also New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) (punitive damages for conduct that may be "characterized as 'gross' and 'morally reprehensible' and 'of such wanton dishonesty as to imply a criminal indifference to civil obligations' "); *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 67 A.D.2d 658, 659, 412 N.Y.S.2d 623 (1st Dep't 1979) (punitive damages may be available on proof of " 'actual malice or ill will,' a wrong 'morally culpable' ... or a wrongful act 'done wilfully, wantonly or maliciously' "), *aff'd*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980) (citations omitted). Where

these factors exist, punitive damages may also be awarded on a claim for tortious interference with contract. *International Minerals & Resources, S.A. v. American General Resources, Inc.,* No. 87 Civ. 3988, 2000 WL 97613 *2 (S.D.N.Y. Jan.27, 2000).

Even viewing the evidence in the light most favorable to Xerox, the nonmoving party on this claim, I find no basis upon which a trier of fact could conclude that Sauer's actions in connection with the appraisal process during the time that Integrated was still a party to the agreement rose to a level of "wanton dishonesty" or other moral culpability sufficient to support a claim for punitive damages. Even if Sauer injected himself into a process with which he had no business becoming involved, I do not believe that a factfinder could reasonably conclude that he acted with reckless disregard of Xerox's rights or with a "criminal indifference" to his civil obligations.

## VI. Fraud

██ Sauer also moves for summary judgment on Xerox's sixth counterclaim, which alleges that Sauer committed fraud in the appraisal process in order to inflate the appraised value of the leased equipment. In order to establish this claim, Xerox must show: a material, false representation; intent to defraud; reasonable reliance on the representation; and damage to Xerox as a result. *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 153 (2d Cir.1995); *Keywell Corp. v. Weinstein,* 33 F.3d 159, 163 (2d Cir.1994); *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970–71 (2d Cir.1987).

██ I find that this claim must be dismissed as well. For one thing, there is no evidence that Sauer defrauded *Xerox;* the alleged misrepresentations were made to Integrated's and Sauer's appraisers. Although Xerox alleges that Sauer sent a "fraudulently inflated appraisal to Xerox, knowing that Xerox would rely on it in determining its negotiation position on the Leased Equipment ...," Xerox's Memorandum of Law at 8, there is no evidence that Xerox did "rely" on that appraisal to its detriment. On the contrary, Xerox did not accept the appraisal submitted to it by Sauer, and therefore sought the appointment of a neutral appraiser by the AAA.

In addition, once again legally recoverable damages are missing. While Xerox again contends that its attorney's fees represent its damages on this claim, not only is that not correct, as already explained, but I fail to see how Xerox's attorney's fees and other expenses related to this litigation can fairly be attributed to Sauer's alleged fraud in procuring an inflated appraisal. Xerox has incurred those costs not because of the appraisal submitted by Sauer or Integrated, but because of Sauer's commencement and prosecution of this lawsuit. I also reject Xerox's contention that it can seek punitive damages on this claim, for the same reasons stated with respect to the tortious-interference claim. While the relationship between Sauer and Xerox has been filled with acrimony, I do not believe that a finder of fact could reasonably conclude that Sauer's involvement in the appraisal process rose to the level of moral culpability required to support an award of punitive damages.

██ I also note that a "separate cause of action for fraud is not stated where, as here, the alleged fraud relates to the defendant's breach of contract." *Towne Ford v. Marowski,* 251 A.D.2d 1075, 1076, 674 N.Y.S.2d 213 (4th Dep't 1998). To the extent that the fraud alleged here forms part and parcel of Xerox's contractual claims, this claim is dismissed for that reason as well.

## CONCLUSION

Defendant's Motion for Partial Summary Judgment (Docket Item 260) is denied. Plaintiff's Cross–Motion for Summary Judgment (Docket Item 270) is

granted, and defendant's counterclaims are dismissed.

IT IS SO ORDERED.