**BRIDGEPORT MUSIC, INC.,**
et al.   Plaintiffs,

v.

**UNIVERSAL MUSIC GROUP,**
INC., et al.   Defendant.

No. 05 CIV. 6430.

United States District Court,
S.D. New York.

July 28, 2006.

Kenneth E. Gordon, Kenneth J. Gordon, James Michael Thayer, Gordon, Gordon & Schnapp, P.C., New York City, Richard Steven Busch, King & Ballow, Nashville, TN, for Plaintiffs.

Andrew Harrison Bart, Stacey Marie Faraci, Pryor Cashman Sherman & Flynn LLP, New York City, for Defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiffs Bridgeport Music, Inc. ("Bridgeport") and Southfield Music, Inc. ("Southfield") (collectively, "Plaintiffs") filed a complaint (the "Complaint") against defendants UMG Recordings, Inc.[1] ("UMG"), Napster, LLC ("Napster"), Apple Computer, Inc. ("Apple"), and Yahoo!, Inc. ("Yahoo") (collectively, "Defendants") seeking declaratory judgment, permanent injunctive relief and damages for copyright infringement. Defendants filed an answer denying most of Plaintiffs' allegations and asserting a counterclaim against Bridgeport for breach of contract. Before the Court is Plaintiffs' motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss this counterclaim. For the reasons discussed below, the motion is granted.

## I. FACTS

On June 1, 1991, Bridgeport entered into an agreement with PolyGram Records, Inc. ("PRI") to settle and resolve competing claims arising out of the assignment to Bridgeport of certain music compositions by George Clinton and his publishing company, in which PRI claimed a security interest. The Agreement grants Bridgeport complete ownership of the compositions as between it and PRI, with Bridgeport in exchange granting PRI non-exclusive mechanical licenses with respect to the compositions. The Agreement states that the mechanical licenses were granted with respect to the compositions "as embodied on Records hereafter released by PRI and/or PRI's affiliates and/or PRI's licensees." (Settlement Agreement § 1(c)(i), dated June 1, 1991, attached as Exhibit A to Declaration of Richard S. Busch, dated November 7, 2005 (the "Agreement").) The Agreement further provides that the licenses "shall not apply to Records embodying the [Copyrighted Compositions] released by licensees and/or third parties not affiliated with PRI[.]" (Id. § 1(c)(ii).)

In the Complaint, Plaintiffs allege that UMG willfully infringed Plaintiffs' copyrights by copying the compositions without authority, by issuing digital download licenses to defendants Napster, Apple, and Yahoo, by willfully inducing Napster, Apple, and Yahoo to commit infringement, and by failing to take corrective action when notified of the infringement. The Complaint further alleges that none of the Defendants was a party to, or an intended beneficiary of, the Agreement, and that the mechanical licenses granted in that Agreement should therefore not extend to Napster, Apple, and Yahoo as they are not affiliated with PRI. Finally, the Complaint alleges that, because digital downloading did not exist in 1991 when the Agreement was entered into, that recording method was not intended to be covered by the Agreement. Plaintiffs allege this is "evidenced by the fact that only mechanical licenses . . . were granted" pursuant to the Agreement. (Complaint ¶ 19.) Thus Plaintiffs contend that their copyrights have been violated because (i) UMG, a non-party to the Agreement, did not have

---

1. The Complaint incorrectly names Universal Music Group, Inc. as a defendant. (See Answer, dated September 9, 2005 (the "Answer"), ¶ 3.) Plaintiffs implicitly concede this error by correctly referring to this defendant as UMG Recordings, Inc. in their motion papers.

the right to grant licenses for the copyrighted compositions, and (ii) even if UMG could grant such licenses, the right to digital reproduction and distribution of the copyrighted works was not included in the mechanical licenses granted in the Agreement.

In their counterclaim, Defendants allege that Bridgeport represented in the Agreement that it possessed the authority to, and in fact did, grant the mechanical licenses to UMG. As such, Defendants allege that through the filing of this action alleging that UMG does not have the right to the benefits of the licenses granted in the Agreement, Bridgeport is now violating the Agreement and is in breach of the Agreement. They further allege that because Section 3 of the Agreement includes an indemnification clause in which Bridgeport agrees to "indemnify and hold harmless PRI" from all claims and liabilities arising out of any breach by Bridgeport with regard to the "representations and warranties" Bridgeport makes in the Agreement, Bridgeport must pay any damages and legal fees that arising from this suit. (Answer, p. 7.) In its motion to dismiss, Bridgeport maintains that (i) it has not breached any representation or warranty contained in the Agreement, (ii) UMG has failed to allege facts constituting a breach of the Agreement, and (iii) UMG lacks standing to bring an action for breach of contract.

## II. STANDARD OF REVIEW

Dismissal of a counterclaim for failure to state a claim pursuant to Rule 12(b)(6) is proper only where "it appears beyond doubt that the [non-movant] can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999). In making this determination, a court must accept all well-pleaded factual assertions in the counterclaim as true and draw all reasonable inferences in favor of the non-movant. *See Meridien Int'l Bank Ltd. v. Government of the Republic of Liberia*, 23 F.Supp.2d 439, 445 (S.D.N.Y. 1998); *see also, Republic of Ecuador v. ChevronTexaco Corp.*, 376 F.Supp.2d. 334, 375 (S.D.N.Y.2005) (applying same principles for motions to dismiss a complaint to motions to dismiss a counterclaim); *D'Jamoos v. Griffith*, 368 F.Supp.2d 200, 203 (E.D.N.Y.2005). The Court is not required, however, to uphold the validity of a claim supported only by conclusory allegations. *See, e.g., In re American Express Co.*, 39 F.3d 395, 400–01 n. 3 (2d Cir.1994) (collecting cases) ("Conclusory allegations of the legal status of the [moving party's] acts need not be accepted as true for the purposes of ruling on a motion to dismiss.")

To inform its ruling in this regard, a court may review documents integral to the counterclaim, upon which the defendant relied in drafting the pleadings, as well as any document attached to the counterclaim as an exhibit or any statements or documents incorporated in it by reference. *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000) (*citing Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989)); *see also Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms.*, 298 F.3d 136, 140 (2d Cir.2002) (noting that the district court could consider the contract without converting this motion into one for summary judgment, because its "terms and effect are relied upon" by the party asserting the claim). Thus, in the instant case, the Court has reviewed and considered the Agreement that is the source of the dispute and is referred to and quoted in both the Complaint and Answer as well as in the counterclaim.

## III. DISCUSSION

To state a claim for breach of contract under New York law, UMG must

allege (1) the existence of a valid, enforceable agreement; (2) performance of the contract by one party; (3) breach of the contract by the other party; and (4) damages. *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir.1996). UMG argues Bridgeport has breached the Agreement because digital sales of the copyrighted recordings are the functional equivalent of the sale of albums, CDs and cassettes and as such are covered by the mechanical licenses granted in the Agreement. On UMG's theory, therefore, by filing a law suit asserting that digital distribution is not covered by the Agreement, Bridgeport is in breach of the representations and warranties made in the Agreement.

UMG's claim centers on Bridgeport's grant of the mechanical licenses, and the language in the Agreement stating that Bridgeport "represent[s], warrant[s] and agree[s]" that it "is the sole and lawful owner of all right, title and interest in and every matter and thing granted and released herein[.]" (Agreement § 2(iv).) The underlying, dispositive dispute concerns how far the mechanical licenses extend and whether the grant includes digital downloads. Even if it is ultimately determined that UMG's position as to the scope of the mechanical licenses prevails, it would not follow that Bridgeport has breached the contract for bringing a good faith, if unsuccessful, copyright infringement action in support of its position. Rather, UMG would be left with an enforceable contract for mechanical licenses that extend to and include its digital download activities. The mere filing of the copyright infringement action cannot, in this case, constitute a breach of the contract.

As Plaintiffs argue, Defendants' asserted breach of contract claim derives from flawed logic. If accepted, this logic would allow any defendant sued for breach of contract to counterclaim against the plaintiff by asserting that the filing of the suit is in and of itself a breach of the contract. When parties have differing positions as to the meaning of a contractual term, it can not be deemed a breach for one party to sue to enforce its view of the contract. Moreover, Plaintiffs point out that the Agreement does not contain a covenant not to sue.[2] Even when covenants not to sue *are* explicitly incorporated in agreements, they are "not looked upon with favor by New York courts, are strictly construed against the party relying upon then, and [require] clear and explicit language in the agreement[.]" *Sauer v. Xerox Corp.*, 95 F.Supp.2d 125, 129 (W.D.N.Y.2000) (*quoting Kaufman v. American Youth Hostels, Inc.*, 6 A.D.2d 223, 177 N.Y.S.2d 587 (2d Dep't 1958)). Thus, finding a cause of action for breach of contract here, merely because UMG believes it is being sued erroneously, would not be consistent with New York law.

UMG further points to the indemnification clause as a specific basis for relief. It argues that if Defendants' "view of liability is correct, i.e., that Defendants prevail on the underlying dispositive issue as to the scope of the relevant mechanical licenses," then UMG is "entitled to indem-

---

**2.** Nor does the Agreement contain specific provisions outlining a negotiated means of resolving disputes arising out of the Agreement. Thus, there can be no allegation that Bridgeport has failed to comply with prerequisites for suit that are required by the contract. *Cf. Sauer*, 95 F.Supp.2d 125, 128 (noting plaintiff's failure to comply with contract's provisions requiring participation in arbitration process as well as notice and cure procedures prior to filing of suit, but finding that there was still no contract breach because the provisions did not constitute a covenant not to sue and therefore defendant failed to allege damages).

nification under the applicable contract." (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Dismiss Counterclaim, dated December 6, 2005, at 1.) The Court does not find this to be a tenable reading of the contract's provisions. The indemnification clause holds Bridgeport liable for any breach regarding its representations and warranties. As mentioned above, Bridgeport represented and warranted in the Agreement that it was the "sole and lawful owner of all right, title and interest in and every matter and thing granted and released herein[.]" (Agreement at 2(iv).) Defendants have not pled any facts contesting this warranty or suggesting that Bridgeport did not in fact have the authority or ownership to convey the license. Bridgeport's assertion in its Complaint that the mechanical licenses did not extend to all of the uses Defendants have engaged in does not contradict its warranty that it was the owner of the compositions, and had the authority to grant the licenses.

It may ultimately be determined that Bridgeport is wrong on its underlying claim, and in that event Bridgeport will lose its case. As explained above, however, such a possible result would not mandate a finding that Bridgeport had therefore breached the Agreement by bringing the suit, which arises out of a genuine dispute as to the meaning of a term used in the Agreement. Thus, UMG has failed to state a claim for breach of contract, as even if all disputed issues are resolved in its favor, it would not succeed on its breach of contract claim.

### IV. ORDER

For the reasons discussed above, it is hereby

ORDERED that the motion of plaintiffs Bridgeport Music Inc. and Southfield Music, Inc. (Docket No. 18) to dismiss the counterclaim of defendants UMG Record-ings, Inc., Napster LLC, Apple Computer, Inc., and Yahoo!, Inc. is GRANTED; and it is further

ORDERED that the parties are directed to confer and to propose to the Court for approval within twenty days of the date of this Order an agreed-upon Case Management Plan in the form provided by the Court.

**SO ORDERED.**